CHRISTIAN DIETRICH *v.* LYDIA HUTCHINSON ET AL.

Special Term at St. Johnsbury, February, 1908.

Present: ROWELL, C. J., TYLER, and MUNSON, JJ.

Opinion filed May 7, 1908.

*Husband and Wife—Wife's Real Estate—Husband's Interest Therein—Presumptions—Mortgages—Lack of Husband's Joinder—Effect—Effect of Husband's Mere Consent—P. S. 2573—Construction—Equitable Mortgages—Informal Execution—Relief in Equity—Equity Pleading—"Saving Benefit of Plea to Hearing"—Effect—Former Suit Pending—Disposition of that Plea—Estoppel—Judgment on Demurrer to Bill—Conclusiveness—Relief in Opposite Alternatives—Election of Remedies—Inconsistent Relief— Appeal—Question not Raised Below.*

A mortgage to secure the purchase price of a married woman's real estate was void as a legal mortgage where her husband did not join as grantor, though he signed and acknowledged it and signed the notes thereby secured.

Where the pendency of a former suit in equity is pleaded in abatement of a subsequent bill, and it appears that the second bill em-

braces the whole subject more completely than the first, it is the practice to dismiss the first bill with costs, and to direct the defendant in the second to answer on being paid the costs of his plea in abatement, which puts the second bill in the same situation in which it would have been had the first been dismissed before the second was brought.

Chancery Rule 16 aside, the practice in equity is not to reply to a plea of a former suit pending, nor to set it down for argument, but to refer it to a master at once as of course, to ascertain and report whether each suit is for the same matter, and if it is, the plea is allowed; if not, it is overruled.

Where the defendant in a suit in equity treated the case throughout as though the plea of a former suit pending was regularly at issue, it is too late for him first to raise the question in the Supreme Court that the truth and sufficiency of the plea were admitted, under Chancery Rule 16, by the orator's failure to set it down for argument, or to take issue thereon, and, therefore, it is not decided whether that rule applies to such pleas.

The rules concerning pleas in equity are so strict and technical that the court has always exercised its discretion concerning them, and in many cases where they are not overruled, will not allow them to have the full effect of pleas, but will sometimes save their benefit to the hearing, and sometimes order them to stand for an answer, as will best subserve the ends of justice.

"Saving the benefit of a plea to the hearing" amounts to an order to adjourn the discussion, and means that if on argument it is considered that as far as appears the plea may be a defence, but that there may be something disclosed in the evidence that will avoid it, supposing the matter pleaded to be strictly true, the court will not preclude the question.

An adjudication in favor of a defendant on demurrer to a bill in equity is merely an adjudication that the orator has not set forth a case that entitles him to relief, and does not determine that he has no case and is not entitled to relief in a subsequent proceeding on different grounds.

In such case the estoppel extends only to the exact point raised by the pleading and decided, whereas, where the adjudication is upon pleadings and proof, the estoppel extends not only to what was decided, but to all that was necessary to determine in order to reach the decision.

11

Where, in an appeal in chancery on demurrer to a bill to foreclose a mortgage, it was determined that since the facts alleged were the same as when the case was previously before the Supreme Court and the mortgage held void, the second decision must be the same, such adjudication was no bar to a subsequent suit in equity pleading a further and fuller statement of facts, and praying for the validation and enforcement of the mortgage, or that it be treated as an equitable mortgage and enforced as such.

Though an orator is not allowed to set up two inconsistent states of fact and ask relief in the alternative, he may allege a single state of facts and ask relief in directly opposite alternatives.

Defeat on one of two directly opposite alternatives in a bill in equity is no bar to trying for relief under the other alternative.

Where, on appeal in a suit in equity to foreclose a mortgage, the mortgage was held void because the mortgagor's husband did not join as grantor, but the case was remanded with liberty to apply for an amendment continuing the suit for a rescission, or for specific performance, of the transaction in which the mortgage was given, the fact that the orator on leave elected to continue the case for a rescission did not constitute such an election of remedies as precluded him from thereafter seeking to enforce the instrument as an equitable mortgage.

Where it does not appear that land conveyed to a married woman was her separate property, it must be taken that it was not, and that, she having died, her surviving husband had a freehold therein.

P. S. 2573, providing that "a husband and wife may, by their joint deed, convey the real estate of the wife as she might do by her separate deed if unmarried," has regard only to the effect of coverture at common law, and was intended to provide a method by which she could at law transfer the title to her real estate. It is an enabling and not a restrictive act, and therefore has no effect on the scope of equitable jurisdiction regarding the rights, liabilities, and duties of married women in respect of their property and contracts.

The construction of P. S. 2573 is not affected by P. S. 3039, prohibiting a married woman from becoming surety for her husband's debts, except by mortgage, and from conveying or mortgaging her property, except by deed duly executed by herself and husband.

A married woman cannot, even by statutory authority, deprive her husband, without his consent, of his marital rights in her real estate not held as her separate property; but where he does con-

sent, the common law effect of coverture is thereby removed, and the matter brought within equity cognizance.

Where, to secure the purchase price thereof, a husband and wife intended to join in a legal mortgage of her real estate, not shown to be her separate property, and, through a mistake of the scrivener, the mortgage was void as a legal mortgage because the husband did not join therein as grantor, though he signed and acknowledged it and signed the notes thereby secured, the instrument was enforceable in equity as an equitable mortgage.

APPEAL IN CHANCERY. Caledonia County. This is a bill in equity praying for the validating and enforcing of an informal mortgage, or that it be treated as an equitable mortgage and enforced as such. The mortgage in question was given by a married woman on her real estate for the purchase price thereof, but was void as a legal mortgage because, through the alleged mistake of the scrivener, the husband did not join as grantor, though he consented to the mortgage, signed and acknowledged it, and signed the notes thereby secured. This mortgage was held void in a prior suit for its foreclosure that was twice in the Supreme Court,—see 73 Vt. 134, and 75 Vt. 389. The defendants are the mortgagor, her husband, and Edward H. Deavitt, who took by quitclaim deed the whole interest of the mortgagor and her husband in the premises in question, with full knowledge of all the facts affecting the orator's rights. The bill in this case was served May 23, 1901.

Defendant Deavitt pleaded in abatement the pendency of said former suit to foreclose the mortgage in question, whereupon the orator amended his bill, and thereupon said defendant demurred to the amended bill, and, after the former bill in said foreclosure proceeding had been dismissed with costs, pursuant to the mandate of the Supreme Court, pleaded that adjudication in bar of this suit. The interlocutory proceedings on said demurrer and pleas are fully stated in the opinion.

Finally, at Chambers on October 10, 1907, without hearing and strictly *pro forma*, the bill was taken as confessed; decree for the orator in accordance with the prayer and as of the June Term, 1907, with one year to redeem, *Miles*, Chancellor. Defendant Deavitt appealed.

*Edward H. Deavitt ,pro se.*

The pleas of prior suit pending and *res adjudicata* should have been held an abatement and bar, respectively, of this suit. "The ground on which pleas of this sort are allowed is not so much the danger of two recoveries for the same cause of action, as the apparent vexation and oppression of instituting two suits, when one would answer every just purpose." *Thomas* v. *Freelon,* 17 Vt. 138; *Low* v. *Mussey,* 41 Vt. 393; Herman on Estop. §275.

The remedies of specific performance and rescission were inconsistent remedies, and a choice between them was presented in the prior cause when that cause was remanded by the Supreme Court with leave to proceed further in the same suit if so advised. The same equity is involved in both causes, and an election of one mode of procedure excluded the other, because it was inconsistent with the procedure adopted. *White* v. *White,* 68 Vt. 161; Herman on Estop. §287; *Chapman* v. *Long,* 66 Vt. 656.

The deed of a married woman which is void by reason of non-compliance with statutory requirements cannot operate as an equitable mortgage. *Dietrich* v. *Hutchinson,* 73 Vt. 134. The void deed of a married woman cannot be reformed in equity. *Hubbard* v. *Hubbard,* 77 Vt. 73; 18 Enc. Pl. & Pr. 789; *Baxter* v. *Bodkin,* 25 Ind. 172; *Stevens* v. *Parish,* 29 Ind. 260; *Central Land Co.* v. *Laidley,* 32 W. Va. 134, 25 Am. St. Rep. 797; *Scott* v. *Battle,* 85 N. C. 185; *Martin* v. *Dwelly,* 6 Wend. 9; *Purcell* v. *Goshorn,* 17 O. 105; *Mattox* v. *Hightshue,* 30 Ind. 95; Bishop on Married Women, §599; *Pratt* v. *Battles,* 28 Vt. 685.

No estoppel can arise from a married woman's defective deed of a property not her separate estate. *Lowell* v. *Daniels,* 2 Gray 161; *Concord Bank* v. *Bellis,* 10 Cush. 276; *Goodenough* v. *Fellows,* 53 Vt. 102; *Hubbard* v. *Bugbee,* 58 Vt. 172. And as Charles Hutchinson did not enter into a covenant, but simply signed and acknowledged an instrument in which another person was grantor, there is no estoppel as to him, and if neither Charles nor Lydia are estopped their assign cannot be. So that cases like *Green* v. *Smith,* 57 Vt. 268, have no application here. Note to *King* v. *Rhew,* 33 Am. St. Rep. 82; *Clark* v. *Winchell,* 53 Vt. 408.

*Fred C. Cleveland,* and *E. W. Smith* for the orator.

The whole transaction becomes an equitable mortgage which this court has the power to foreclose. The orator alleges that Charles and Lydia Hutchinson agreed and intended to give a good mortgage at law; that the mortgage in fact turned out to be invalid technically as a legal mortgage; that all parties to the transaction supposed it to be a valid legal mortgage until declared void by the Supreme Court; that the failure to give a valid legal mortgage was not the fault of either the orator or the Hutchinsons, but due to the ignorance of the scrivener, who drafted the mortgage, of the requisites of a valid legal mortgage in the State of Vermont. An agreement to give a mortgage, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat that as done which by agreement is to be done. *Atkinson* v. *Miller*, 9 L. R. A. 544, and notes; 1 Jones on Mortgages, (3rd Ed.) §§163, 168 and cases cited in foot notes; *Love* v. *Mining Co.*, 32 Cal. 639; *Miller* v. *R. & R. R. R. Co.*, 36 Vt. 452; *Morrill* v. *Morrill*, 53 Vt. 74; *Poland* v. *Lamoille Valley R. R. Co.*, 52 Vt. 144.

ROWELL, C. J. This is an appeal in chancery. The orator sold and conveyed his messuage in Lyndon to Lydia Hutchinson, a married woman, for a thousand dollars, of which she paid two hundred dollars down, and gave him promissory notes for the balance, signed by herself and husband; and also gave him a mortgage on the messuage to secure the notes, but the mortgage was void as a legal mortgage because her husband did not join therein as a grantor, though he signed and acknowledged it.

The orator seeks relief against the land by foreclosure or in some other way, for the satisfaction of his notes. He brought a suit once before, for the same purpose, but failed, and the bill was dismissed after this suit was commenced. The defendant pleaded in abatement the pending of that suit. Thereupon the orator amended his bill on leave. Subsequently, and after the former bill was dismissed with costs, pursuant to the mandate of the Supreme Court, the defendant pleaded that adjudication in bar of this suit. The printed case does not show whether these pleas were traversed or not, though the orator's brief says that the plea in bar was traversed, and the defendant's brief says that the plea in abatement was not traversed. In this uncer-

tainty we applied to the clerk, who informs us that neither plea was traversed. Both pleas, however, were referred to a master to inquire into their truth, and he inquired and reported that neither was true. The defendant filed several exceptions to the report, the substance of which is, that the papers in the case, and the facts and circumstances reported, show that the pleas are true, and that the master should have so found. On hearing, the exceptions were overruled and one of the pleas, but it does not specifically appear which one; but as the bill in this case embraced the whole subject in dispute more completely than the first bill, the costs of the plea were allowed to the defendant, and the benefit of the exceptions and of the plea saved to the hearing, and the defendant given thirty days to answer. After the lapse of that time without answer, the defendant demurred to the amended bill for want of equity. The demurrer was overruled, the amended bill adjudged sufficient, the benefit of the demurrer saved to the hearing, and the defendant given forty days to answer. Subsequently, and long after the expiration of the forty days, no answer having been filed, the bill was taken as confessed, *pro forma,* a decree entered for the orator according to the prayer thereof, and a time fixed for redemption. From this decree, the defendant appealed.

From the fact that the decree overruling the exceptions and one of the pleas allowed to the defendant the costs of the plea because the second bill embraced the whole subject in dispute more completely than the first bill; and from the further fact that the decree refers to 2 Dan. Ch. Pl. & Pr. *721, for authority on the subject, which states the practice in that regard respecting pleas of former suit pending,—it clearly appears that that was the plea overruled, for the awarding of costs as of a plea allowed is applicable only to such pleas, as to which the practice is, when the second bill embraces the whole subject more completely than the first, to dismiss the first with costs, and to direct the defendant in the second to answer on being paid the costs of a plea allowed, which puts the second bill in the same situation it would have been in had the first been dismissed before the second was brought. Story's Eq. Pl., Redf. ed., §738; Tyler's Mitf. Eq. Pl. & Pr. 339; 2 Dan. Ch. Pl. & Pr. 721*. Mr. Hoffman says that if the master reports that two bills are for one and the same purpose, the second bill must be

dismissed, unless the plaintiff obtains leave to dismiss the first and retain the second, which will be granted on paying the costs of dismissing the first and of the plea allowed. To this proposition he cites *Crofts* v. *Wortley,* 1 Chan. Cas. 241, where a former bill depending was pleaded in abatement of a second bill; but though both bills were to the same matter and effect, the second had some new matter, and it was ordered, that as the plea was good, the plaintiff should pay the usual costs of a plea allowed, but that the defendant should answer the second bill, and the first bill be dismissed with costs.    Hoff. Ch. Pr. 226.    Indeed the rules concerning pleas in equity are so strict and technical, and the danger of injustice often arising from them so great, that the court has always exercised its discretion respecting them, and in many cases when they are not overruled, will not allow them to have the full effect of pleas, but will sometimes save their benefit to the hearing, and sometimes order them to stand for an answer, as the court thinks will best subserve the ends of justice.    *Rhode Island* v. *Massachusetts,* 14 Pet. 210, 257.

Now although the benefit of this plea was saved to the hearing, yet that can avail the defendant nothing, for saving the benefit of a plea to the hearing means, that if, on argument, it is considered that as far as appears the plea may be a defence, but that there may be something disclosed in the evidence that will avoid it, supposing the matter pleaded to be strictly true, the court will not preclude the question. Story's Eq. Pl., Redf. ed. §698; Tyler's Mitf. Pl. & Pr. 391; 1 Hoff. Ch. Pr. 224.    Mr. Daniels says that such an order is, in fact, nothing more than an order to adjourn the discussion.    2 Dan. Ch. Pl. & Pr. 800*.    *Heartt* v. *Corning,* 3 Paige 566, is a good illustration of when the benefit of a plea will be saved to the hearing.    That was a bill by a surviving partner against the executor of the deceased partner, for an accounting and a settlement of the partnership affairs.    To a part of the bill the defendant pleaded accounts stated and settled, and the balances carried forward by the partners to new accounts.    The court thought, on argument, that if the plea turned out to be true in fact, it would be sufficient to prevent a general accounting for the time covered by it, but as it was possible that something might be disclosed in evidence that would make it proper to permit the complainant to surcharge and falsify the accounts,

especially one of them, which could not be done if the plea was allowed as a conclusive bar against opening the accounts, the benefit of the plea was saved to the hearing. Thus it appears that the case in hand was not one for saving the benefit of the plea to the hearing, for the master found the plea to be untrue in fact, and the court overruled it. Still, the defendant got the same benefit of the plea as though it had been allowed, for had it been allowed the court would not have abated the second bill, but, following the practice, would have given the defendant, as it did give him, the costs of his plea, and have ordered him, as it did order him, to answer the second bill; and as the first bill had already been dismissed with costs, the second bill would then have stood as it now stands, in the same situation it would had it been brought after the first bill was dismissed. So the defendant has nothing to complain of because the plea was overruled, and therefore it is unnecessary to inquire whether it is good or not.

But the defendant says that as the orator did not take issue on the plea, he thereby admitted both its truth and its sufficiency, according to Rule 16, which provides that the complainant shall set down a plea for argument, or take issue on it, in such a time, or be deemed to admit its truth and sufficiency, and his bill be dismissed as of course. The rule aside, the practice is, not to reply to a plea of a former suit pending, nor to set it down for argument, but to refer it to a master at once and of course, to ascertain and report whether both suits are for the same matter; and if they are found to be, the plea is allowed; and if they are found not to be, it is overruled. *Battell* v. *Matot*, 58 Vt. 271, 281, 5 Atl. 479; Story's Eq. Pl. Redf. ed. §§738, 743; 2 Dan. Ch. Pl. & Pr. 726*; Tyler's Mitf. Eq. Pl. & Pr. 337. We do not consider whether the rule was intended to embrace pleas of this kind or not, for if it was, and issue should have been taken on the plea, the defendant having treated the case throughout as though the plea was regularly at issue, it is too late for him to raise the question now for the first time. *Tilghman* v. *Proctor*, 102 U. S. 707, 734.

As to the plea in bar, it does not appear to have been disposed of at all below, other than by the master's report and overruling the exceptions thereto. But it is to be noticed that the adjudication it sets up as a bar was made on a demurrer to the bill for want of equity, and not on the merits of the

case; and an adjudication in favor of a defendant on demurrer to a bill in equity is simply an adjudication that the orator has not set forth a case that entitles him to relief. It does not, and in the nature of things cannot, determine that he has no case, and shall not have relief in a subsequent proceeding on grounds different from those disclosed in the first. 2 Smith's Lead. Cas., 7th Am. ed., 784; *Gilman* v. *Rives,* 10 Pet. 301, 302. In such a case the estoppel extends only to the exact point raised by the pleadings and decided, although if the adjudication be upon pleadings and proofs, the estoppel extends not only to what was decided, but to all it was necessary to determine in order to reach the decision. *Wiggins Ferry Co.* v. *Ohio & Miss. Railway Co.,* 142 U. S. 396, 410; *Packet Co.* v. *Sickles,* 5 Wall. 580, 592; *Russell* v. *Place,* 94 U. S. 606; *Tarbell* v. *Tarbell,* 57 Vt. 492; *Railroad Co.* v. *Bixby,* 57 Vt. 548, 562; *Wilbur* v. *Gilmore,* 21 Pick. 250.

Now the precise point decided by the adjudication pleaded in bar was, that as the facts alleged then were the same as when the case was passed upon before, the decision must be the same. Therefore the adjudication pleaded is no bar to this suit, which sets up a further and fuller state of facts, and goes for validating and enforcing the mortgage held void in the former suit, or for treating it as an equitable mortgage, and enforcing it as such.

But the defendant further contends under this plea, that when the former case was remanded from the Supreme Court with liberty to apply, there was then presented to the orator a choice between specific performance and rescission, and that he chose rescission by amending his bill and praying for it, and prosecuting the suit to final decree, and therefore is now concluded by that election, as those remedies were inconsistent.

But though an orator is not allowed to set up two inconsistent states of fact, and ask relief in the alternative, any more than a defendant is allowed to set up inconsistent defences; yet he may set up a single state of facts, and ask relief in directly opposite alternatives, as was done in *McConnell* v. *McConnell,* 11 Vt. 290. There the bill was drawn in a double aspect, as the Court said it well might be, so that if the orator failed to establish one ground for relief he could rely upon another ground, though wholly or in part inconsistent with the former. The bill alleged that the defendant, the orator's

brother, had fraudulently induced their father while weak and infirm in body and mind, to make a very unequal settlement of his estate, by which the orator was wholly deprived of his share thereof, except a certain promissory note executed by the defendant to his father, who intended and declared it to be for the orator's share. The orator sought in the first place to set aside the entire settlement, and failing that, to obtain the note, which he alleged was in the defendant's hands as administrator of his father's estate, and which he refused to pay. The defendant answered, and the answer was traversed and testimony taken, and the first aspect of the case decided against the orator, and the case continued in order to make new parties. Subsequently, that necessity having been obviated by disclaiming affidavits, the court found for the orator on the merits of the claim for the note, and decreed its payment to him instead of its surrender, as it could not be enforced at law, the defendant being its maker and administrator of the estate of the payee. That case shows that defeat on one of two directly opposite alternatives for relief in a bill in chancery, is no bar by election nor otherwise to trying for relief under the other alternative. Hence the defendant's contention that the orator is concluded by his election to try for rescission, is not sustained.

It remains to consider whether the orator has any and what remedy on the merits of the case. As it does not appear that the messuage in question was the separate property of Mrs. Hutchinson, who died before suit brought, it must be taken that it was not her separate property, and consequently, that her husband, who is in parts unknown, has a freehold therein. Therefore the defendant claims that the mortgage Mrs. Hutchinson gave, not being joined in as grantor by her husband, is void, and cannot operate as an equitable mortgage; nor be reformed in equity; nor treated as an agreement to give a valid mortgage; and if it could, that equity will not decree a specific performance of it, as she was a married woman.

When the former case was here the first time—73 Vt. 134, 50 Atl. 810—we said, as the case was presented, that said mortgage was void, and could not be validated without statutory power, and that the transaction could not be treated as an equitable mortgage. But the case now presented is essentially different from the case then presented. By that case, as was said

of it when here the last time—75 Vt. 389, 56 Atl. 6—it did not appear why the name of the husband was not inserted in the body of the mortgage as a grantor; that it might have been omitted by mistake, ignorance of the draftsman, fraud of Mrs. Hutchinson, or the mutual agreement of the parties. But it now appears that the orator procured the mortgage to be drawn by a justice of the peace resident in New Hampshire, who intended to draw a valid mortgage, but failed to insert the name of Mr. Hutchinson in the body of the mortgage as a grantor because of his ignorance of the requisites of a valid mortgage in this State; that at the time of the execution of said mortgage, both Mrs. Hutchinson and her husband agreed and fully intended to deliver to the orator a valid mortgage; that the orator was ignorant of the requisites of a valid mortgage, and relied upon the justice to draft such a mortgage; and that at the time it was delivered to him he believed it was valid, and continued in that belief until the Supreme Court held otherwise.

The statute that "a husband and wife may, by their joint deed, convey the real estate of the wife as she might do by her separate deed if unmarried,"—the construction of which is not affected by the Married Women's Act of 1884, P. S. 3039, as was held in 73 Vt. 137, 50 Atl. 810—does not declare the separate deed of the wife void, nor imply that it is void, except as resulting from the effect of coverture. It has regard only to the effect of coverture at common law, and was intended to provide a way by which she could, at law, transfer the title of her real estate notwithstanding the common law effect of coverture. It is an enabling act, and not a disabling or restrictive act, and cannot be regarded as trenching upon the scope of equitable jurisdiction and interposition in reference to the rights, liabilities, and duties of married women in respect of their property and contracts. *Frary* v. *Booth,* 37 Vt. 78, 83.

The reason that a married woman can in equity and for her own benefit charge her real estate that is her separate property, is that she holds it to her sole use, to the exclusion of the marital rights of her husband. But as to her real estate not thus held, she cannot deprive him of his marital rights therein without his consent, not even by statutory authority. *Hubbard* v. *Hubbard,* 77 Vt. 73, 58 Atl. 969. But when he does consent, it would seem that the common law effect of coverture should

be regarded as thereby removed, and the matter brought within equity cognizance. And such a matter was so regarded and brought in the unreported case of *Buchanan* v. *Chamberlin,* in Orange County, referred to in *Frary* v. *Booth,* 37 Vt. 84, where it is said that a mortgage by a wife to secure the payment of money borrowed to pay towards the purchase of the mortgaged property, was held valid against the husband and the children, the wife being dead. The bill in that case, as shown by the record, alleged that Mahitable B. Chamberlin, wife of Josiah Chamberlin, executed to the orator her promissory note for six hundred dollars, payable in two years, to secure the payment of which she executed and delivered to the orator a mortgage of certain land; that said note was given for money borrowed by the said Mahitable to pay towards the purchase money of the land mortgaged, which she had then recently purchased of Samuel Hutchins and Moses Buchanan, from whom she received a conveyance thereof in fee; that her husband was present when she bought the land, and consented thereto, and to the conveyance thereof to her, and was present when she borrowed said money, and consented thereto, and to the execution and delivery of said note to the orator, and also to the execution and delivery of said mortgage; that the said Mahitable paid said money to her grantors towards the purchase price of said land, with the knowledge and consent of her husband; that the orator lent and advanced said money in sole and exclusive reliance on the security of said land, as she and her husband well knew, and that but for said security he should not have lent it at all; and that the said Mahitable was dead, her husband and six minor children surviving her. The bill prayed for relief in divers ways, and among them, by foreclosure. Mr. Chamberlin and the children were served with process, and appeared and answered, and testimony was taken, and the case heard on bill, answer, traverse, and testimony, and a decree of foreclosure entered, which was affirmed on appeal to the Supreme Court.

The ground of that decision must have been that as against the husband and the children, the transaction alleged and proved entitled the orator, in equity, to have the security that it was agreed and intended he should have,—that it constituted an equitable mortgage to the same intents as a mortgage joined in by the husband would have constituted a legal mortgage.

That case is much like this in its facts and circumstances, and is authority for a like holding as against the husband and the defendant Deavitt, who took by quitclaim deed the entire interest of the Hutchinsons, with full knowledge of the transaction, and therefore with notice of whatever rights by way of remedy the orator had by reason of the defective execution of the mortgage, as we held when the former case was here the first time.

*Decree affirmed and cause remanded.*