E. W. BLONDIN *v.* E. D. BROOKS ET AL.

November Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 23, 1910.

*Real Property—Evidence of Title—Deeds—Conveyance of Right, Title, and Interest—Adverse Possession—Color of Title—Fences—Judgment—Conclusiveness as Bar—Estoppel—Parties—Issues—Tenancy in Common—Privity—Admissions of Tenant in Common—Divorce—Foreign Judgment—Full faith and Credit—Residence—Jurisdiction—Husband and Wife—Wife's Sole Deed—Quieting Title—Right to Sue—Requisites.*

A deed of real estate is no evidence of title where it does not appear that the grantor had any interest by possession or otherwise in the land covered by the deed.

A deed purporting to convey only the grantor's right, title, and interest in the land therein described does not imply ownership in the grantor.

Where the description in a deed is insufficient to locate the land, the deed cannot give color of title.

A fence so maintained as to indicate that the occupant is claiming to it has the same operation in extending the effect of acts of possession that color of title has; but whether a particular fence does indicate such claim, or was maintained merely as a convenient mode of enclosing other lands, is a question of fact to be determined by the trier.

Possession of land under a claim of right is essential to acquisition of title by adverse possession.

It is no objection to the application of the rule of *res judicata* that the parties to the former action include some who are not joined in the subsequent action, nor the converse, as the rule is applicable to all who were parties to both actions.

When a former judgment is relied upon as an absolute bar to a sub-
    sequent action, it must appear that the cause of action and the
    thing to be recovered are the same in both suits, and so, while the
    form of action is not important, there must be between the two
    actions identity of parties, of subject-matter, and of causes of action;
    but when some controlling fact or question material to the deter-
    mination of both suits has been adjudicated in a former suit by
    a court of competent jurisdiction, and the same fact or question is
    again at issue between the same parties, its adjudication in the
    first suit, if properly presented, will be conclusive of the same fact
    or question in the second suit, regardless of whether the cause of
    action in both suits is the same.

It is proper to draw a bill in equity in a double aspect, to the end that,
    if the orator fails to establish one ground of relief, he may rely
    upon another, though wholly or partially inconsistent.

There is no privity between tenants in common of realty, for they hold
    by unity of possession, but by several and distinct titles, and hence
    the admissions of one tenant in common of realty are not receiv-
    able against his co-tenant.

To constitute domicile, both residence and intention to remain are
    necessary.

The full faith and credit clause of the Federal Constitution does not
    require the courts of one state to give effect to a decree of divorce
    rendered by a court of another state, even though the decree is valid
    there, but was rendered without the appearance of the libellee or
    personal service on him within that jurisdiction, and especially
    where it appears that the libellant deceived the court that granted
    the divorce as to the *bona fides* of her alleged residence within its
    jurisdiction.

Where a wife, resident and owning a farm in this State, after failing
    in her attempt to procure a divorce here, went to New Mexico with
    only her personal clothing, and after remaining there with relatives
    for thirteen months, there instituted against her husband a suit
    for divorce and served him in this State where he resided, but he
    did not appear, and she concealed from the New Mexico court her
    failure to procure a divorce here, and the evidence was insufficient
    to support the finding of that court that she was a *bona fide* resident
    of New Mexico, and she returned to Vermont almost immediately
    after the divorce was granted, our courts will not recognize the
    decree.

Strangers to a judgment may impeach it collaterally.

A married woman's sole deed of her realty is void, in the absence of a renunciation by her husband of his marital rights, but with such renunciation it conveys an equitable interest in her land.

In a suit in equity to remove a cloud on title, where a husband's renunciation necessary to validate his wife's deed to the property was not in the case, the Supreme Court will remand the cause to have it brought in, if great injustice would otherwise be done.

An equitable title with the right to call in the legal title is sufficient to maintain a bill of peace.

An equitable title, coupled with possession is sufficient to maintain a bill to quiet title.

APPEAL IN CHANCERY, Franklin County. Heard at Chambers, December 17, 1907, on the pleadings, master's report, and orator's motion to recommit the report. Motion denied, and decree that the bill be dismissed with costs. The orator appealed. The opinion states the case.

*H. P. Dee* and *M. H. Alexander* for the orator.

The judgment in the county court case is conclusive on all the defendants, because all the defendants, except Brooks and Younger, claim as lessees under those two, and had a right to appear in the county court case. *Whitney* v. *Brunette,* 15 Wis. 70; *Lipscomo* v. *Postell,* 38 Miss. 476; *Cecil* v. *Cecil,* 19 Md. 72; *Patterson* v. *Lothrop,* 34 Penn. St. 223; *Castle* v. *Noyes,* 14 N. Y. 329; Greenl. Ev. §523; Herman on Estoppel, §139; Taylor's Landlord and Tenant (8th ed.) §436; *Goddard* v. *Benson,* 15 Abb. Pr. N. Y. 191; *Manley* v. *Kidd,* 33 Miss. 141; *Johnson* v. *Weld,* 8 La. Ann. 126; *Lindsey* v. *Danville,* 46 Vt. 144; *Spencer* v. *Dearth,* 43 Vt. 98; *Village of Port Jervis* v. *National Bank of Port Jervis,* 96 N. Y. 550; *Missouri Pac. R. Co.* v. *Twiss,* 35 Neb. 267; *Davis* v. *Smith,* 79 Me. 351; *Crawford* v. *Turk,* 24 Gratt. Va. 176; *Audenreid* v. *Woodward,* 4 Fed. 173; *Am. Bell Tel. Co.* v. *Nat. Tel. Co.,* 27 Fed. 663; *Thomsen* v. *McCormick,* 136 Ill. 135; *Albert* v. *Hamilton,* 76 Md. 304; *Riley* v. *Grafton Nat'l Bank,* 81 Md. 14; *Williams* v. *Snebly,* 92 Md. 9; *Carpenter* v. *Prior,* 30 Vt. 81.

The New Mexico decree is valid, and in any event cannot be attacked by strangers to it. *Tyler* v. *Aspenwall,* 73 Conn. 493; *Foster* v. *Mansfield,* 146 U. S. 88; *Drexel's Appeal,* 6 Pa. 272; *Aetna Ins. Co.* v. *Aldrich,* 38 Wis. 107; *Robinson* v. *Stevens,* 63 Vt. 555; *Smith* v. *Hall,* 69 Conn. 651; 1 Black Judgt. §§317, 359; *Baugh* v. *Baugh,* 37 Mich. 59; *Waldo* v. *Waldo,* 52 Mich. 94; *Cassen* v. *Brown,* 74 Ill. App. 346; *Packard* v. *Smith,* 9 Wis. 184; *Uzzle* v. *Vinson,* 111 N. C. 138; *Porter* v. *Gile et al.,* 47 Vt. 623; *Mussey* v. *White,* 58 Vt. 45; *Kimball* v. *Newport,* 47 Vt. 38; *Lancaster* v. *Wilson,* 27 Gratt. 624; *Secrist* v. *Green,* 3 Wall. 744; *Cooper* v. *Reynolds,* 10 Wall. 316; *Cochran* v. *Davis,* 20 Ga. 581; *Davis* v. *Helbig,* 27 Md. 452; *Moore* v. *Robinson,* 6 Ohio St. 302; *Billings* v. *Russell,* 23 Penn. St. 189; *Moore* v. *Ware,* 51 Miss. 206; *Willis* v. *Ferguson,* 46 Tex. 496; *Gunn* v. *Plant,* 94 U. S. 664; *George* v. *Norris,* 23 Ark. 121.

The authorities are innumerable which hold that a decree of divorce granted in another state settles the property rights of the parties thereto. *Barrett* v. *Falling,* 111 U. S. 523; *Hilbish* v. *Hattle,* 145 Ind. 59; *Chapman* v. *Chapman,* 48 Kan. 636; *Arrington* v. *Arrington,* 102 N. C. 491; *Marvin* v. *Marvin,* 59 Iowa 699; *Boyles* v. *Latham,* 61 Iowa 174; *Succession of Benton,* 106 La. 494.

The great weight of authority is to the effect that a state may grant a divorce to one domiciled therein against a nonresident and based on constructive service, and that by comity that divorce will be recognized everywhere. *Joyner* v. *Joyner,* 18 L. R. A. (N. S.) 647; *Felt* v. *Felt,* 59 N. J. Eq. 606; *Jackson* v. *Jackson,* 34 Ga. 511; *Lyon* v. *Lyon,* 2 Gray 367; *Hanover* v. *Hanover,* 14 Mass. 227; *Cheever* v. *Wilson,* 9 Wall. 108; *Hekking* v. *Plaff,* 32 Fed. 403; *Chapman* v. *Chapman,* 48 Kan. 636; *Dunham* v. *Dunham,* 162 Ill. 589; *Hill* v. *Hill,* 166 Ill. 54; *Smith* v. *Smith,* 43 L. R. A. 1140; *Harding* v. *Alden,* 9 Me. 140; *Ditson* v. *Ditson,* 4 R. I. 87; *Harteau* v. *Harteau,* 14 Pick. 181; *Fray* v. *Fray,* 10 N. H. 61; *Thompson* v. *State,* 28 Ala. 12; *Thompson* v. *Thompson,* 91 Ala. 591; *In re James,* 99 Cal. 374; *Hood* v. *State,* 56 Ind. 263; *Wakefield* v. *Ives,* 35 Iowa 288; *Kline* v. *Kline,* 57 Iowa 386; *Van Orsdal* v. *Van Orsdal,* 67 Iowa 35; *Hawkins* v. *Ragsdale,* 80 Ky. 353; *Gould* v. *Crow,* 57 Mo. 200; *Antony* v. *Rice,* 110 Me. 223; *Eldred* v. *Eldred,* 62 Neb. 613; *King* v. *Thomas,* 95 Tenn. 60; *Shafter* v. *Bushnell,* 24 Wis. 372.

*C. G. Austin & Sons, C. D. Watson* and *Farrington & Post* for the defendants.

Napoleon Chennette, the defendant's husband, was domiciled in Vermont and did not go to New Mexico. The matrimonial domicile was therefore in Vermont. The pretended service upon him was not a personal service such as would render a judgment obtained binding, except perhaps in the jurisdiction which granted it. *Pennoyer* v. *Neff*, 95 U. S. 714; *Prosser* v. *Warner*, 47 Vt. 667; *Bischoff* v. *Wethered*, 9 Wall. 814; *Price* v. *Hickok*, 39 Vt. 292; *Thompson* v. *Whitman*, 18 Wall. 457; *Haddock* v. *Haddock*, 201 U. S. 562.

The law of full faith and credit does not apply to divorces granted in a sister state. *Hood* v. *State*, 56 Ind. 263; *Sewall* v. *Sewall*, 122 Mass. 156.

A judgment against one of two or more co-owners of land, all being in possession, will not conclude the other co-owners who were not parties to the suit. *Williams* v. *Sutton*, 43 Cal. 65; *Scison* v. *McLaws*, 12 Ga. 166; *Miller* v. *Brockett*, 47 Fed. 547; *Stokes* v. *Morrow*, 54 Ga. 597; *Stovall* v. *Carmichad*, 52 Tex. 383; *Bass* v. *Servier*, 58 Tex. 567.

ROWELL, C. J. This is a bill in chancery to remove a cloud, and to quiet title to certain land at St. Albans Bay, claimed to have been a part of the James M. Haynes farm there situate. of which the orator's grantor, Mary E. Chennette, is the owner, and has been ever since the death of Mr. Haynes in 1894, under whose will she took title. The orator claims the land under a quitclaim deed from Mrs. Chennette to him, dated April 15, 1903. The defendants Brooks and Younger claim title under a quitclaim deed from A. O. Brainerd to them, dated November 18, 1899. As to the other defendants it is sufficiently accurate for present purposes to say that they claim under Brooks and Younger.

Whether Mrs. Chennette had title or not, depends upon whether Haynes had title; and whether he had it or not, depends upon whether he acquired it by virtue of a quitclaim deed from Ralph Laselle to him, dated May 27, 1869, or by adverse possession, or both.

But the master says that he is unable to find whether Haynes acquired title under the Laselle deed or not, "as none of the deeds or records introduced in the case describe or locate the land in question."

It must be said, therefore, that it does not appear that Haynes acquired title under the Laselle deed. And there is another reason why that must be said, for it does not appear that Laselle had any interest by possession nor otherwise in the land covered by his deed, wherever it was, and therefore it is no evidence of title in Haynes. *Potter* v. *Washburn,* 13 Vt. 558, 37 Am. Dec. 615; *Bank of Middlebury* v. *Rutland,* 33 Vt. 414; *Wilder* v. *Davenport,* 58 Vt. 642, 5 Atl. 753. And further, when the thing itself is not sold, but only, as here, the right, title, and interest therein, the law implies ownership neither in land nor in chattels. *Baker* v. *Sherman,* 73 Vt. 26, 50 Atl. 633; *Cummings* v. *Dearborn,* 56 Vt. 441.

And Brainerd's deed to Brooks and Younger stands the same in this respect as Laselle's deed to Haynes, and so is no evidence of title in Brooks and Younger, and it does not appear that they otherwise have title.

But it is claimed that Haynes acquired title to the land in question by adverse possession. That, however, does not appear, for as to the part of it that lies south of Dock Street and west of the fence that he built in 1875, and maintained till his death, and on which, it would seem, most if not all of the cottages stand—the master expressly says he is unable to find that he acquired title to it by adverse possession; and as to the part of it that lies south and east of said fence it can not be said that he thus acquired title to it, for it does not appear that he had color of title to it by virtue of the Laselle deed, as the master is unable to locate the land therein described; and though a fence so maintained as to indicate that the occupant is claiming to it, has the same operation in extending the effects of acts of possession that color of title has, and gives constructive possession in the same way, yet whether a fence in the concrete case does in fact indicate such claim, or whether it was maintained merely as a convenient mode of inclosing other lands, is a question of fact for the trier, and here the question is not found either way by the master. So it can not be said that Haynes's occupancy, whatever it was, which does not appear, was under a

claim of right, which is essential to the acquisition of title by adverse possession. *Soule* v. *Barlow*, 48 Vt. 132; s. c. 49 Vt. 329; *Lathrop* v. *Levarn*, 83 Vt. 1, 74 Atl. 331.

But it is claimed that though the master's findings do not show title in Haynes, and so not in Mrs. Chennette, yet, that title is shown in both of them as against the defendants, by the judgment in the case of the orator against the defendant Brooks, tried and determined at the September term, 1902 of Franklin county court. We have to learn what was in issue in that case mainly from the charge to the jury, which is before us, for the master finds but little about it, though what he does find accords with what the charge shows. But we learn from the briefs of counsel that the action was trespass for entering upon the land in question, and tearing down and removing, or attempting to tear down and remove, a boathouse thereon that the orator had bought. From the charge we learn that the defendant did not deny the act complained of, but justified it on the ground that he was the owner of the land. We also learn that the plaintiff claimed in the right of Mrs. Chennette, and that the defendant claimed under said deed from Brainerd to him and Younger. So the question was, as the court told the jury, whether the land there in dispute belonged to Mrs. Chennette, the plaintiff's lessor, or to the defendant. The court further told the jury that there was no question but that Mrs. Chennette owned the Haynes farm, but that the question was whether the piece in dispute belonged to that farm. Each party introduced deeds in support of his claim, but the court told the jury that neither showed perfect record title, and that neither could stand upon his title independent of possession; but that each had introduced deeds that gave him color of title, and afforded a basis for possession. So the case was submitted to the jury on the issue of title by adverse possession, and on that question the right of recovery was made to depend, though the court told the jury that if the plaintiff was entitled to recover, he was entitled to recover not only the nominal damages that would be given for stepping upon the land and going to the boathouse, but for the injury to the boathouse, which the plaintiff in fact owned, and to the personal property there. Verdict and judgment for the plaintiff.

The orator claims that that judgment is conclusive here on all the defendants, all of whom knew about the case, and all but

McArthur and Younger were witnesses in it. The defendants claim the contrary, and say that it is not conclusive on any of them, not even on Brooks, though he was a party, because they say (1) that there is no identity of parties, cause of action, subject-matter, nor conditions; (2) that said judgment is open to inquiry, because it is impossible to·say on which of two issues it was based; (3) that it did not settle the question of title so as to bar an inquiry into it here; and (4) that the orator waived the estoppel, if any there was, as his bill indicates that he desired that any doubt arising out of the uncertainty of the trespass suit in respect of establishing title in Mrs. Chennette adverse to Brooks and Younger and their tenants, should be forever settled; and as it prays that the court take jurisdiction of a state of facts that would hardly warrant such jurisdiction if said judgment is a bar; as, of facts essential to establish the title that he now claims was fully litigated in the trespass suit; and as it prays that ''all the rights of the various parties be fully and finally determined.''

As to the identity of parties. It is said in 24 Am. & Eng. Ency. Law, 2d ed. 733, that it is no objection to the application of the rule of *res judicata* that the parties to the former action include some who are not joined in the subsequent action, nor the converse; that the rule is applicable to all who were parties in both actions. So in 23 Cyc. 1242, it is said that when both the party offering a judgment as an estoppel and the party against whom it is so offered were parties to the action in which the judgment was rendered, it is no objection that the action included some additional parties who are not joined in the present action, nor that there are additional parties in the present action; but that this does not make the judgment admissible as evidence either for or against parties to the pending action who were not parties to the action in which it was rendered. And so are the cases. Thus, in trespass on the case against two, one pleaded in bar a former adjudication in his favor between him and the plaintiff alone, and had judgment. The other pleaded the general issue and the same adjudication, and judgment went against him on both. *Lansing* v. *Montgomery,* 2 Johns. 382.

So in *Goble* v. *Dillon,* 86 Ind. 327, 44 Am. Rep. 308. it is said not always to be essential in order to bar an action by a former judgment that all the parties in both actions should be the same; and held that if the plaintiff's cause of action in that

case was litigated in an issue made and adjudicated in a former action between him and one of the defendants, that that defendant could plead the former judgment though the other defendant was not a party to that issue, and so could not use that judgment as a defence.

So in *Nave* v. *Adams,* 107 Mo. 414, 28 Am. St. Rep. 421, 17 S. W. 958, it was held that a judgment is conclusive of the issue involved in a controversy as between parties and privies, though in the action in which it is pleaded, some only of the parties are litigants. And see *Pierson* v. *Catlin,* 18 Vt. 77, 85.

As to the identity of subject-matter and causes of action. There is a material difference between the effect of a judgment as a bar or an estoppel to the prosecution of a second suit for the same cause of action, and its effect as an estoppel in another action between the same parties upon a different cause of action. When the former judgment is relied upon as an absolute bar to a subsequent action, it must appear that the cause of action and the thing to be recovered are the same in both suits; and while the particular form of action may not be important, there must be as between the two actions, identity of parties, of subject-matter, and of causes of action, to constitute the first judgment a bar to the second suit. But when some controlling fact or question material to the determination of both suits was adjudicated in the former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties, its adjudication in the first suit will, if properly presented, be conclusive of the same fact or question in the second suit, irrespective of whether the cause of action is the same in both suits or not. *Cromwell* v. *County of Sac,* 94 U. S. 351; *Fayerweather* v. *Ritch,* 195 U. S. 276, 300, 49 L. ed. 210, 25 Sup. Ct. 58; *Wright* v. *Griffey,* 147 Ill. 496, 35 N. E. 732, 37 Am. St. Rep. 228; *Wells* v. *Boston & Maine R. R. Co.,* 82 Vt. 108, 71 Atl. 1103. The case at bar belongs to the latter class. It follows, therefore, that the claims thus far considered are not well founded.

Nor is the claim well founded that the judgment is open to inquiry because it is impossible to tell on which of two issues it was based, for, as we have seen, the right to recover was made to depend wholly on the issue of title by adverse possession. Neither is the claim that the judgment does not settle the title

so as to bar inquiry into it well founded as to the parties thereto, for they are bound by it, as we shall see; and whether all or any and which of the other defendants are bound by it, remains to be seen.

The claim of waiver of the estoppel by the frame and prayer of the bill amounts to no more than saying that the bill is drawn in a double aspect, so that if the orator failed to establish one ground for relief he could rely upon another ground, though wholly or in part inconsistent with the former. But that way of drawing a bill is entirely proper, according to *McConnell* v. *McConnell* 11 Vt. 290, which shows, as said in *Dietrich* v. *Hutchinson*, 81 Vt. 160, 69 Atl. 661, that defeat on one of two directly opposite alternatives for relief in a bill in chancery, is no bar by election nor otherwise to trying for relief under the other alternative.

Thus it appears from what we have said, that as the defendant Brooks was a party to the action in which said judgment was rendered, he is bound by it, though the cause of action there was not the same as the cause of action here, and though there are defendants here who were not defendants there.

But the defendant Younger is not bound by that judgment, for he was not a party to the action in which it was rendered, had no right to control the defence, to adduce testimony, to cross-examine witnesses, nor to appeal from the judgment, and is not in privity with Brooks, as he does not claim under him, nor in identity of interest with him, but only in community of interest. This want of privity results from the very nature of the estate of tenants in common, who hold by unity of possession but by several and distinct titles, and are deemed to have several and distinct freeholds, which is a leading characteristic of such a tenancy, and each is considered to be solely and severally seised of his share. If they join in a lease, it is, in law, the distinct lease of each, for they are severally seised, and there is no privity of estate between them. 4 Kent. Com. *367.

And further, the ground on which admissions bind those in privity with the one making them is, that they are identified in interest. But the rule, of course, extends no farther than the identity. 1 Greenl. Ev., 5th ed., §188. But the admissions of one tenant in common of realty are not receivable against his cotenant, because their interest is not identical, but is a mere

31

community of interest.    2 Wig. Ev., §1081, (2) ; *Osgood* v. *Manhatten Co.*, 3 Cow. 612, 622, 15 Am. Dec. 304.

Nor are the other defendants bound by said judgment, for they all claim under both Brooks and Younger; and as both of them are not bound, none of those claiming under both are bound.

Our holdings thus far make it necessary to consider whether the orator's deed from Mrs. Chennette gives him any title, and this depends, as the case is presented, upon whether we recognize the divorce she obtained in New Mexico in July, 1901.    The master finds that she was married to Napoleon Chennette on September 22, 1893, and brought her libel for divorce against him to the September term 1898 of Franklin county court for wilful desertion and intolerable severity, which was dismissed at the September term 1899, but whether on the merits or not he does not find, but the orator's brief says that the case was tried at that term and dismissed, and we shall take it so, as the orator is setting up the New Mexico divorce in support of his title.    The master further finds that in April, 1900, Mrs. Chennette left this State and went to New Mexico, where she remained about eighteen months; that she took with her only her personal clothing, and that during the time she was in New Mexico she owned the Haynes farm, where her household furniture remained all the time she was there; that on the 4th of May, 1901, she preferred a complaint for divorce against her husband to such a court in Mora county, New Mexico, setting up abandonment without just cause and refusal to support, and was granted a divorce on July 9, 1901, as shown by a duly certified copy of the record of the proceedings and judgment in said cause, which is referred to and made a part of the report, and from which it appears that the orator in this case, not being thereunto appointed, on the 16th of said May, delivered a copy of said complaint, with a summons attached, to the said Napoleon Chennette at St. Albans in this State, where he then lived, commanding him to appear and make answer within thirty days therefrom, in default of which the complainant would apply for the relief demanded; that the said defendant did not appear, nor submit to the jurisdiction of the court in any way, and that the parties lived together on the Haynes farm from the time they were married until he abandoned her about nine months thereafter.    Said copy further

shows that the complainant had a sister in New Mexico, with whom she made her home, but spent some of the time at the ranch of her brothers, keeping house for them.

The case was referred, and the referee finds that the complainant had been a *bona fide* resident of the county of Mora for more than twelve months next before the commencement of the action, and was such resident at the time of its commencement, and that the service of process on the defendant therein was according to the laws of New Mexico.

Said copy purports to contain a narrative of all the testimony taken before the referee, which consists of that of the complainant; that of the husband of her sister—we infer from the name—with whom she made her home; and that of a clerk in his store, who—we infer from the name—was either a brother or a nephew of the complainant. Now while the complainant testified that she was "a resident" of Mora county, and had been since April 27, 1900, it is noticable that she said nothing about the character of her residence there in respect of her intention to remain nor otherwise. Nor did either of the other witnesses except her brother-in-law, who said that she was a *"bona fide"* resident there, a thing that he could not know intuitively, but only by inference based upon sufficient data, but he gave no data at all, sufficient nor otherwise. So it appears that the referee had little or nothing before him from which to find that the complainant was a *bona fide* resident there, except the inference of that witness. But if he had known what the complainant concealed from him, namely, that when she went to New Mexico she took with her only her personal clothing, and that at the time she appeared before him she owned a farm in Vermont where she had lived and made it her home for five or six years before going to New Mexico, and where her household furniture was left and still remained; and if he had further known what she also concealed from him, that she had preferred a libel for divorce against her husband in Vermont, which was dismissed on trial the fall before she went to New Mexico—he might not have found that she was a *bona fide* resident of that territory, but a *mala fide* resident, or at most, might have left her case to stand on mere residence, which would not have given jurisdiction, for domicile was essential to jurisdiction, and to constitute that, not only was residence there necessary, but an

intention to remain was also necessary, and neither without the other was sufficient.  Mere absence from a fixed home, such as she had in Vermont, however long continued, could not work a change of domicile.  There must have been the *animus* to change, and there was little or nothing to show that, except her mere presence there, and no effort was made by counsel nor the referee to elicit anything on that subject.  *Mitchell* v. *United States,* 21 Wall. 350, 22 L. ed. 584; *Sun Printing and Pub. Asso.* v. *Edwards,* 194 U. S. 377, 383, 48 L. ed. 1030, 24 Sup. Ct. 696.

Now it may be that on the face of the record that divorce is good in New Mexico.  But if it is, it is certain that it is not entitled to obligatory enforcement here under the full faith and credit clause of the Federal Constitution.  The recent case of *Haddock* v. *Haddock,* 201 U. S. 562, 50 L. ed. 867, 26 Sup. Ct. 525, is controlling authority for saying this.  There it was held that the courts of New York were not bound by the Federal Constitution to give effect to a decree of divorce granted in Connecticut to a husband who had left his wife in New York and acquired a new domicile in Connecticut, when the wife did not appear in the Connecticut suit, and the separation took place, as the New York court found, by fault of the husband, though the Connecticut court had found the contrary.  The New York decree granted the wife a divorce and alimony, notwithstanding the Connecticut decree, and that judgment was affirmed, as not violative of the full faith and credit clause of the Federal Constitution because the Connecticut decree was not admitted in evidence.  But that case, as it expressly says, leaves uncurtailed the legitimate power of all the states over a subject peculiarly within their authority, and thus not only enables them to maintain their public policy, but also to protect the individual rights of their citizens; and does not deprive a state of the power to render a decree of divorce enforceable within its borders as to persons within its jurisdiction; and does not debar other states from giving such effect to a decree of that character as they may elect to do under mere principles of state comity.

In the opinion in that case, Mr. Justice White deduces the law of the several states from the rulings of their courts of last resort, and classes it to be embraced within one or another of the following heads, namely:  (1) States where the power to decree a divorce is recognized, based upon the mere domicile of the

plaintiff, although the decree when rendered will be operative only within the borders of the state, wholly irrespective of any force that may be given to it in other states. This proposition, he says, embraces the law of all the states. (2) States that decline, even on principles of comity, to recognize and enforce as to their own citizens, within their own borders, decrees of divorce rendered in other states, when the court rendering them had jurisdiction of only one of the parties. In this class he puts Massachusetts, New York, New Jersey, with qualification, Pennsylvania, South Carolina, and Vermont. (3) States which, while giving some effect to decrees of divorce rendered against its citizens in other states where the court had jurisdiction of the plaintiff only, either place the effect given, upon the principles of state comity alone, or make such limitation upon the effect given as indubitably establishes that the recognition is merely a result of such comity. (4) States which, though not actually so deciding, lend themselves to the view that *ex parte* decrees of divorce rendered in other states would receive recognition by virtue of the full faith and credit clause.

The case on the strength of which Mr. Justice White classes Vermont with the states that decline, even on principles of comity, to recognize and enforce as to their own citizens, within their own borders, decrees of divorce rendered in other states, when the court rendering them had jurisdiction of only one of the parties,—is *Prosser* v. *Warner,* 47 Vt. 667, 19 Am. Rep. 132, which he cites but does not review. That was debt on a decree for alimony rendered by the supreme court of New York without jurisdiction of the person of the defendant who lived in Vermont. But though the court considered the matter and said that a decree of divorce rendered in a state where the cause of action did not accrue, and where the parties were not living together as husband and wife, and where the defendant was not served with process and did not voluntarily submit to the jurisdiction of the court,—is wholly void in any other jurisdiction than the one in which it was rendered; yet, it did not put the case on that ground, but said that whatever might be the validity of such an *ex parte* decree upon the marriage relation of the parties, it had found no case that held that a decree for the payment of money as alimony is any different from any other *ex parte* judgment calling for satisfaction by the payment of money,

and the defendant had judgment on that ground. So it would seem that it can not be said that the court *decided* that such a decree of divorce is void everywhere except in the jurisdiction in which it was rendered.

But be that as it may, it is not necessary to consider that question on the basis of domicile, for if the court rendering a decree was cheated in that respect, which is jurisdictional, all agree that the decree will not be recognized abroad on any ground, not even that of comity, which is not a rule of law, and therefore does not command but only persuades, and fraud does not persuade but dissuades. But it is objected that the decree in question can not be collaterally impeached. This however, is not so, for the defendants are strangers to it, and strangers can impeach a judgment collaterally when it is for their interest to impeach it at all. This is settled law, and has been often announced by this Court. *Corey* v. *Morrill,* 71 Vt. 51, 58, 42 Atl. 976.

This brings us to consider this decree from the standpoint of fraud upon the court rendering it respecting a matter going to its jurisdiction. We have already seen what the case discloses on this point up to the time the divorce was granted in New Mexico in July, 1901. It further appears that in about four months after that, Mrs. Chennette returned to her farm in St. Albans, where she has lived ever since. And here we note in passing, though we make no use of it, that it appears from the transcript of the testimony in the trespass case of *Blondin* v. *Brooks,* above referred to, which was tried in September, 1902, about a year after Mrs. Chennette returned from New Mexico, that she was called as a witness for the plaintiff, and testified that she lived at St. Albans Bay, and had for nearly nine years; that she lived in Mr. Haynes's family about a year and a half, and until his death—which, it will be remembered, was in 1894—and that since she went there she had lived and made it her home "right there at Mr. Haynes's," but was away about a year and a half—left there in 1900.

Although the master makes no substantive finding as to the character of Mrs. Chennette's residence in New Mexico, yet the facts before us that we are entitled to consider are so suggestive of fraud on the part of Mrs. Chennette, and indicate so strongly that her residence in that territory was for the sole and only

purpose of getting there what the court had denied her here, namely, a divorce, with no intention of remaining thereafter; and especially as she cheated the court there by concealing that denial here, which, had it been disclosed, ought to have, and probably would have, worked a different result,—we are not inclined to recognize her divorce here.

It has been held that a wife who, on separation from her husband, goes to another state for the purpose of obtaining a divorce there, and brings a suit without disclosing that a suit is pending in the state of her former residence, involving the same matter, in which she had appeared,—is guilty of such fraud as to invalidate the decree obtained by her, although the pendency of the former suit could not have been pleaded in bar nor in abatement of the latter suit. *Dunham* v. *Dunham*, 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70.

It follows, therefore, that the orator's deed from Mrs. Chennette conveys no title, her husband not joining in it, and no renunciation of his marital rights being shown. Such a renunciation is handed up, however, but counsel agree that it is not in the case. The court below overruled the orator's motion to recommit the report that it might be brought into the case, and rightly enough on the ground on which it was put. But if it is essential to the orator's case that the renunciation be before us, we shall send the case back on our own motion, that it may be brought in, for such is our practice when otherwise great injustice would be done, as it would be here. And it is essential, if it would give the orator's deed sufficient efficacy to enable him to maintain his case against Brooks, as to which we will inquire.

Many courts hold, and among them the Supreme Court of the United States, that under the jurisdiction and the practice in chancery, independent of any statute, a bill to quiet title can not be maintained without clear proof of both possession and legal title in the complainant. *Frost* v. *Spitley*, 121 U. S. 556, 30 L. ed. 1010, 7 Sup. Ct. 1129. But in *Langdon* v. *Templeton*, 61 Vt. 119, 17 Atl. 839, it was held that an equitable title with the right to call in the legal title, is sufficient to maintain a bill of peace. The case was then up on demurrer to the bill, which showed a good tax sale that lacked nothing for consummation but the collector's deed. The case went back, and came up again on facts found that showed the tax sale to be void, and so

to confer no title at all. But it was held, nevertheless, that the orator, who was in possession, was entitled to relief. But that case stands on its own facts, and should be so regarded. It is safe to say, however, that the doctrine of this Court is, that an equitable title with possession, is sufficient to maintain such a bill. It is also the doctrine of this Court that the sole deed of a married woman, when her husband has renounced his marital rights, conveys an equitable interest in her land. This was so held in the recent case of *Dietrich* v. *Hutchinson*, 81 Vt. 160, on the strength of *Frary* v. *Booth*, 37 Vt. 78.

Thus it appears that the renunciation in question would give the orator's deed sufficient efficacy to enable him to maintain his bill against Brooks, and therefore the case will be sent back that he may avail himself of it.

*Decree dismissing the bill with costs affirmed as to all the defendants but Brooks, as to whom it is reversed pro forma, as there was no error in dismissing it as to him, and cause remanded, with directions to bring said renunciation into the case, and when it is brought in, to decree for the orator against Brooks according to the prayer of the bill, with or without costs below as may be and has been there determined.*