## W. G. SCHOFIELD'S ADMX. *v.* METROPOLITAN LIFE INSURANCE CO.

May Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and MILES, JJ.

Opinion filed October 27, 1906.

*Insurance Policy—Statements in Application—Warranties— Effect of Incorrectness—Applicant's Honest Belief—Illness Defined—Evidence—Burden of Proof—Question for Jury.*

Where a life insurance policy purports to have been issued partly in consideration of the assured's answers and statements contained in his written application therefor, which answers and statements are by the terms of the policy made warranties and a part thereof, if any such answer or statement is incorrect, it is a false war-

11

ranty and vitiates the policy, regardless of whether the applicant honestly believed it to be true.

In assumpsit on such a policy of life insurance, where the defence is that certain answers of the assured in his written application are incorrect, the burden is on the defendant to establish that fact.

Where there is any substantial evidence tending to support plaintiff's case, it would be error to direct a verdict for defendant.

In assumpsit on a life insurance policy purporting to have been issued partly in consideration of the assured's answers contained in his written application therefor, which answers are by the policy made warranties and a part thereof, evidence examined and *held* that whether certain of said answers were correct was a question properly submitted to the jury.

The fact that the brother of the assured received a letter from him mailed in Colorado in the winter of 1901-1902 does not tend to prove either that the assured then had consumption or that he then resided in Colorado; hence, it was not error for the court to refuse to allow defendant's counsel to argue to the jury, on that evidence, that Colorado and California were resorts for consumptives, and that the insured went there in the winter of 1901-1902.

The word "illness," as used in questions to an applicant for life insurance, means a disease or ailment of such a character as to seriously affect the healthfulness of the system, and not a mere temporary indisposition.

ASSUMPSIT on a policy of life insurance. Plea, the general issue and notice. Trial by jury at the September Term, 1905, Washington County, *Powers,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The court's instruction on the question of illness referred to in the third exception, was as follows:

"A mere temporary indisposition, not serious in its nature, is not an illness within the meaning of this inquiry. Illness as here used means a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution. So that

if there was an illness within the meaning of this term in this question, it must have been of the character I have indicated to you.    And any illness, either under this question or under the consumption question, must be one that has become seated in the person so as to have begun its work of destruction to the health and constitution of the applicant, in this case, Schofield."

*Zed S. Stanton,* and *Senter & Senter* for the defendant.

The answers in the insured's written application are warranties, and if any one is untrue, the policy is void, regardless of the honest belief of the insured.   *Northeastern Mut. Life Asso'n,* 50 Vt. 630; *Cerys* v. *State Ins. Co.,* 27 Ins. Law Jour. 258; *Metropolitan Life Ins. Co.* v. *Moravec,* (Ill.) 73 N. E. Rep. 415; *Hartford Life and Annuity Co.* v. *Gray,* 91 Ill. 159; *Wright-*v. *Equitable Life Assurance Soc.,* 50 How. Prac. 367; *Modern Woodmen of Am.* v. *Van Wald,* 49 Pac. Rep. 782; *Foot* v. *Aetna Life Ins. Co.,* 61 N. Y. 571; *Woehrle* v. *Metropolitan Life Ins. Co.,* 46 N. Y. Supp. 862; *Vose* v. *Eagle Life etc. Co.,* 6 Cush. 42; *National Union* v. *Arnhorst,* 74 Ill. App. Court 482; *The Mutual Benefit Life Ins. Co.* v. *Cannon,* 48 Ind. 264; *Mut. Life Ins. Co. etc.* v. *Arhelger,* 4 Ariz. 271; *Knights of Damon* v. *Wood,* 120 Ga. 328; *Hutton* v. *Waterloo Life Ins. Co.,* 1 Falc. & F. 735; May, Ins. §303; *Phillips* v. *New York Life Ins. Co.,* 9 N. Y. Supp. 836; *Horn.* v. *Mut. Life Ins. Co.,* 64 N. Y. Super. Ct. 81; *Edington et al.* v. *Aetna Life Ins. Co.,* 100 N. Y. 536; *Cazenove et al.* v. *British Equitable etc. Co.,* 6 C. B. 437; *Everett* v. *Desborough,* 5 Bing. 693; 1 Beech Ins. §437; *Cobbs* v. *Covent Benefit Association,* 155 Mass. 176; *Metropolitan Life Ins. Co.* v. *McTague,* 48 N. J. L. 592; *White* v. *Providence Assurance Co.,* 163 Mass. 109.

That Colorado was a place to which consumptives resorted is so notorious, so universally known, that defendant's counsel had the right to argue that matter to the jury.    *Humphrey* v. *Burnside,* 4 Bush. 215; *Hart* v. *Bodley,* Hardin (Ky.) 98; *Hoare* v. *Silverlock,* 12 Q. B. 624; Taylor on Ev. §4, Note 2; *Myer* v. *Krauter,* 56 N. J. L. 698; *Comm.* v. *Marznski,* 149 Mass. 72; *Brown* v. *Piper,* 91 U. S. 37; *Sacalaris* v. *Eureka & Palisade R. R. Co.,* 18 Nev. 155; *Gilbert* v. *Flint etc. R. R. Co.,* 51 Mich. 488; *Lake* v. *Calhoun & Co.,* 52 Ala. 115; *Tehune* v. *Philips,* 99 U. S. 593; *King* v. *Gollan,* 109 U. S. 99; *Lohman* v. *State,* 81 Ind. 15; *Bell* v. *Kalamazoo Pub. Co.,* 40 Mich. 251; *State* v. *Price,* 12 Gill & J. (Md.) 260; *Boullemot* v. *State,* 28 Ala. 83; *Bell* v. *Barnet,* 2 Marsh J. J. (Ky.) 516; *Burdine* v. *Grand Lodge of Alabama,* 37 Ala. 478; *Downie* v. *Hendrie,* 46 Mich. 498; 28 Am. Law Reg., 456, §31, 28 Ala. 83; 28 Am. Law Reg., 462-3, 126 Mo. 168; *Pearce* v. *Langfit,* 101 Pa. 567; *Oppenheim* v. *Wolf,* 3 Sandf. Ch. (N. Y.) 571; *White* v. *Mo. Pac. R. R. Co.,* 19 Mo. App. 400; *Decelis* v. *U. S.,* 13 Court of Claims, 117; *Rowland* v. *Miller,* 139 N. Y. 103; *Fowle* v. *Park,* 48 Fed. 794; *Eureka Vinegar Co.* v. *Printing Co.,* 35 Fed. 570; *Atchison etc. Co.* v. *Headland,* 18 Colo. 477; *Benson* v. *R. R. Co.,* 98 Cal. 45; *State* v. *Main,* 69 Conn. 123; *Knowlton* v. *N. H. & H. R. Co.,* 72 Conn. 188; *C. C. C. etc. Co.* v. *Jenkins,* 174 Ill. 398; *Rosted* v. *R. Co.,* 76 Minn. 123; *Meyers* v. *Menter,* 63 Neb. 427; *Hunter* v. *N. Y. etc. Co.,* 116 N. Y. 615; *Austin* v. *State,* 101 Tenn. 563; *Mullen* v. *Sackett,* 14 Wash. 100.

*John W. Gordon* and *R. A. Hoar* for the plaintiff.

MILES, J.    Three questions are raised in this case, viz.: first, did the court below err in refusing to direct a verdict for the defendant; second, was it error for the court to deny the

request of counsel for the defendant, for "leave to argue to the jury that California and Colorado were places where consumptives go," and third, was the charge of the court respecting what constituted illness, error?

A motion to set aside the verdict was made by the defendant, and a large number of requests to charge were attached to the bill of exceptions, but they did not show that there was any exception taken to a refusal to comply with them, and the defendant makes no point as to either; hence they are disregarded by us in the consideration of this case.

The action is assumpsit upon a life insurance policy issued upon the application of the plaintiff's intestate. The policy bears date Nov. 30, 1901, and the considerations expressed are the answers and statements contained in the printed and written application for the policy and the annual premium of forty-four dollars and sixty-nine cents; which answers and statements in the application are, by the terms of the policy, made warranties and a part of the policy. The terms of the policy are also made subject to the conditions set forth on its reverse side, and provide that those conditions are made and accepted by the insured as a part ·of the contract of insurance. The only condition alluded to in the policy having a bearing upon any question in this case, is the third. That provides, that, if any answer or statement in the application is not true, the policy shall be void and all premiums paid shall be forfeited. The application, among other things, contained a statement, that it was agreed and warranted by the undersigned, the insured, that any false, incorrect or untrue answer should render the policy null and void and should forfeit all payments made thereon, and that the answers and statements contained in the application and those made to the medical examiner should be the basis and become a part of that contract of insurance.

At the close of all the evidence the defendant moved for a verdict on the ground, as it claimed, that the undisputed evidence in the case showed that the insured falsely answered the following questions contained in his statement to the medical examiner, viz.: "Have you ever had consumption?" and "Have you consulted any other physician, if so when and for what?" Both questions were answered, "No."

The authorities do not all agree respecting the effect of an incorrect answer to a question contained in a statement made by the insured to a medical examiner, where the question calls for an opinion and the answer is honestly made in the belief that it is true. Those favoring the rule, that it does not amount to a warranty and so does not render the policy void, base their reasoning upon the presumption that the insurer only expects that the insured will give his honest opinion, as that was all he could give; that, when a correct answer could only be given from an examination by a physician, the insurer, by taking the answer of the insured through its own physician, impliedly gives the insured to understand that an honest and full answer, so far as he knew, is all that is required.

Such are the cases referred to in May on Insurance, 2nd. ed. §296. In that section the author states as a conclusion arrived at from the weight of authorities upon that subject, as follows: "An honest belief in the truth of his answer is all that is required of the applicant. He may have had repeated attacks of disease, but if he does not know, or have reason to believe that they are within the range of the inquiry, his failure to answer is immaterial, even though in point of fact, they had a tendency to shorten life and to increase the hazard of the risk." Later along in the same section the author says: "In such case the rule seems to be, that if the inquiry calls for an answer which involves a matter of opinion,

the applicant is answerable only for the honesty of his opinion, although the answer be untrue in fact."

Cases holding that such incorrect answers render the policy void, whether honestly made or not are referred to by the same author in section 297 in the following language: "Though some of the cases make use of language strong enough to require that he must answer truthfully at his peril, without regard to the applicant's knowledge of, or reason to believe, the truth of the facts as stated or omitted, yet as we have before seen, the facts in those cases did not require so strong and so extreme a ruling; and it may be doubted, if, in view of the current of opinion, in a case presenting the exact point, the courts using this language will not be found in accord with the other authorities."

Our own State seems to have followed that class of cases which hold that an incorrect answer in the application or statement made to the medical examiner is a false warranty and renders the policy void, whether the applicant believed the answer to be true or false. *Powers* v. *N. E. Mut. L. Association,* 50 Vt. 630. That being the holding of our own Court, it becomes unnecessary to inquire as to where the balance of authority lies. Following, therefore, our own decided case, which is similar to the case at bar, we hold, that the answers to the questions, "Have you ever had consumption?" and "Have you ever consulted any other physician, and if so, when and for what?" were warranties, and, if false, rendered the policy void.

The question, then, arises, does the undisputed evidence show, that they or either of them were false?

It is elementary, that, if there is any substantial evidence supporting the plaintiff's claim, the court will not direct a

verdict for the defendant, but must submit the question to the jury.

The defendant's evidence tended to prove that at the time the policy was obtained by the insured, he had consumption. This evidence was based upon opinion formed from the discovery of tubercular bacilli in the sputum of the insured and upon personal examination. Medical authority produced by the plaintiff testified that it was not conclusive evidence that the insured had consumption because tubercular bacilli were found in his sputum, and, that his sputum having been examined on a later date, and two tests having been made and no tubercular bacilli then being found, the conclusion naturally followed that the tubercular bacilli found on the former occasion was not the product of consumption, but was a result often obtained from the examination of the sputum of a healthy person.    Dr. Jackson, the defendant's examining physician, who made the examination of the insured and who took the statements and answers, claimed by the defendant to be false, testified, that in his judgment, the insured did not have consumption at the time of making his application for, and taking out this insurance.    His testimony, as well as that of several other witnesses, tended to prove that the insured did not die of consumption.    There was other evidence in the case tending to prove that the insured did not have consumption at the time he answered "no" to the question, "Have you ever had consumption?"    There was also evidence in the case tending to prove that the insured never had consumption previous to taking out the policy of insurance in question.    Enough has already been shown, without alluding further to the evidence, to justify the court below in refusing to direct a verdict for the defendant upon this point.

To show that the insured answered falsely the question, "Have you consulted any other physician?" when he answered "no," the defendant produced Doctor Bidwell, who testified in substance, that he first saw the insured June 5, 1901; that at that time he was an examining physician for the defendant; that the insured came to him to be examined, and that on that occasion he did examine him superficially; that the insured said to him that he came to him for that examination because he had been told that he had trouble with his lungs and he wanted another examination.   No charge was made for the examination, nor did the doctor advise him to do anything, until shortly before his death, long after the insurance was taken out.   The doctor distinctly states that he was not consulted by the insured before the claimed answer, and that he did nothing but examine him.   Merely calling into the office of a doctor for some medicine to relieve a temporary indisposition, or simply for an examination to ascertain if there is any ailment or complaint about the person, and for nothing more, is not a consultation by a physician.   *Billings* v. *Metropolitan Ins. Co.,* 70 Vt. 477.   The answer of the insured, that he had not consulted any other physician, is not shown by this witness to be false.

Dr. Grout was the only other witness who testified upon this point.   He testified that the insured consulted him for four or more years, one or more times in each year, about his physical condition, before making application for insurance; that some time he gave him some general advice, but what it was he could not state, and could not say that he had ever prescribed for him or charged him anything for advice or treatment; nor had he been paid anything by the insured until his last sickness, several months after the insurance had been taken out.   Dr. Grout's evidence, as a whole, showed that he had only an indistinct recollection of what occurred on the occa-

sions when the insured visited him and had the consultations to which the doctor testified.    He could not remember what the consultations were about, whether more than one took place in each year, and whether they continued through ten or not more than four years.    On cross-examination, the doctor testified with reference to those consultations as follows: "How did I know what he had in mind, or whether he came in there with the idea of getting my professional opinion, how could I know?    Nothing said or done to indicate what he was there for so you would know."

The testimony of Dr. Grout was exceedingly slight upon this point, even if it had any tendency to prove a consultation; but assuming, though not deciding, that it did have such tendency, there was evidence in the case tending to prove that the insured did not consult Dr. Grout previous to taking out the policy in question.

The evidence of the plaintiff tended to show, that, during the years in which the doctor testified that those consultations took place, the insured was strong, robust and in good health, and that he was not in need of and, in fact, did not receive any medical treatment.

The plaintiff's evidence further tended to contradict Dr. Grout's testimony by showing that his statements made out of court were inconsistent with and contradicted his testimony given in this case.    The plaintiff's evidence also tended to prove that Dr. Grout was a witness interested in behalf of the defendant and had taken an active part in its defence.

The defendant's claim being, that the answers of the insured, in the respect complained of, were false warranties and that the insured had committed a fraud, cast upon the defendant the burden of proving that fact.    As a matter of law, the court could not presume it in the absence of all proof.    *An-*

*thony* v. *Mer. Accident Ins. Co.,* 44 Am. St. Rep. 369.   Indeed, the defendant does not claim that it could, but claims that the testimony of Drs. Bidwell and Grout proves it and that neither is contradicted.   We have seen that the testimony of Dr. Bidwell had no tendency to prove it, and, if the testimony of Dr. Grout had a tendency to prove it, there being evidence on the part of the plaintiff contradicting his testimony, the court below was justified in refusing to direct a verdict for the defendant upon that testimony alone, and in submitting to the jury to find whether Dr. Grout's testimony established the fact that the insured consulted him within the meaning of the law as explained in the charge to which no exception was taken. This disposes of the first question upon the ground that Dr. Bidwell's testimony does not tend to show that the insured ever consulted him; and that, if the testimony of Dr. Grout has a tendency to show that the insured, at some time previous to the application for the insurance in question, consulted him, there was evidence in the case tending to disprove it, or, at least, to contradict Dr. Grout's testimony upon this point which would, in effect, be evidence tending to disprove it; for such contradiction might in the minds of the jury wholly discredit the doctor.   It is, therefore, unnecessary to decide whether the testimony of Dr. Grout tends to prove that he was consulted by the insured previous to his answers to the medical examiner.

The second exception is to the refusal of the court to allow defendant's counsel to argue to the jury, that California and Colorado were resorts for consumptives and that the insured went to those places in the winter of 1901-1902.   The case shows that the only evidence upon this point was, that the brother of the insured received a letter from him mailed from Colorado.

A large portion of the defendant's brief is devoted to a discussion of the question of whether this Court will take judicial notice of the fact that Colorado is a place to which consumptives resort, and that subject was exhaustively treated by the defendant; but we think it unnecessary to decide that question, as it is wholly immaterial.

The only purpose for which the defendant could argue that the insured was in Colorado in the winter of 1901-1902 and that Colorado is a resort for consumptives, would be to show that the insured had consumption at that time.   Without saying more respecting the soundness of such an argument, based solely upon the single fact, that the brother of the insured, during that winter, received a letter from the insured mailed in Colorado, we hold, that that fact has no tendency to prove that the insured had consumption, or that he resided in Colorado.   That evidence was as consistent with the theory that it was mailed while passing through Colorado as it was with the theory that the insured was residing there at the time it was mailed, besides, we should hesitate to hold, if the evidence did in fact have a tendency to prove that the insured had gone to Colorado to reside temporarily or permanently, that it was evidence that he then had consumption.

We find no error in the court's ruling upon this point.

The third exception is to the court's definition of the term "illness."   We find no error in this respect.   The language used was substantially that used by this Court in *Billings* v. *Metropolitan Ins. Co.,* 70 Vt. 477.

*Judgment affirmed.*