JOHN L. SPAULDING, ADMR. ET AL. *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

November Term, 1921.

Present:   POWERS, TAYLOR, MILES, and SLACK, JJ., and WILLCOX, Sup. J.

Opinion filed May 2, 1922.

*Judgment—Conclusiveness—Determination of Identity of Subject-matter—When Question for the Jury—Estoppel by Verdict—What Constitutes Adjudication—When Finding of Facts Res Judicata—Decision by Supreme Court that Trial Court Erred in Refusing to Direct Verdict for Defendant Equivalent to Judgment Entered for Defendant at Close of Trial—Issues Litigated—Former Adjudication of Fraud Conclusive as to Matters Embraced in Former Decision—Elements of Fraudulent Representations—Matters Collaterally or Incidentally in Question—Rule as to Suspicious Alterations Inapplicable Where Issue Is Contents of Instrument When Delivered—Contracts Construed as Intended By Parties—Uncertainty in Insurance Policy Resolved in Favor of Insured—When Statements in Insurance Application Warranties—Language of Policy Construed with Respect to Fraudulent Representations—Effect of Amended Application for Insurance as to Medical Examination—Facts Held to Show Neither Waiver Nor Estoppel As to Defense of Fraud—Insurance Policy Voidable for Fraud—Points Not Brought to Attention of Trial Court Not Considered.*

1. In a second action between the same parties or some of them based upon a different cause of action, the former adjudication only operates as a bar as to those matters in issue, or points controverted, upon the determination of which the verdict was rendered.

2. In such a case, the first action is conclusive only upon matters actually litigated and determined therein, and to ascertain what such matters are, ordinarily involved an inquiry as to the identity of the subject-matter upon evidence outside the record in the former case; and, unless the proof admits of but one conclusion, presents a question for the jury.

3. Estoppel by verdict applies when some specific fact or question has been litigated in a former suit which has proceeded to judgment, and the same fact or question is again put in issue between the same parties or their privies.

4. It is not the finding of facts which constitutes an adjudication, but the conclusion of the court as to the effect of those facts determined as a matter of law.

5. The merging of a finding of facts in a judgment gives it the effect of *res judicata*.

6. The decision of the Supreme Court in review, that the trial court in an action on an insurance policy had erred in overruling the defendant's motion for a directed verdict on the ground of fraud in the application for insurance, has the same legal effect, as far as the issues litigated which entered into and formed the basis of the decision are concerned, as though the original judgment had been for defendant, and amounted to a determination of such issues.

7. To determine what issues were litigated and determined in a former suit, resort may be had to the pleadings and the opinion of the court therein.

8. Where in a former suit on an insurance policy, it was determined, as the basis of the judgment, that the policy then in suit was rendered voidable because of false and fraudulent representations by the insured in his application for insurance, as between the parties to the former suit the fraudulent character of such representations has become *res judicata*, and in a subsequent trial between such parties the former adjudication, properly presented in evidence, was conclusive on the matters embraced in the former decision.

9. Intention to deceive and resultant deception are essential elements of fraudulent representations.

10. Every point, expressly or by necessary implication in issue in an action, and which must necessarily have been decided to support the judgment rendered therein, is concluded by the judgment, but not such matters as were merely collaterally or incidentally in question or such as may be inferred by argument from the judgment.

11. In an action on an insurance policy where one question in issue was whether a copy of the application for insurance, if ever attached to the policy in question, was removed before delivery thereof to the insured, the rule that a suspicious alteration will be presumed to have been made after the execution of the instrument and that the party claiming thereunder will be required to explain and remove such suspicion, is not applicable, the issue being as to the contents of the instrument when delivered.

12. Where there is no statute affecting the question, the meaning of language used in a contract is to be determined by the intention of the parties and interpreted in the sense intended by the parties, even though the instrument is susceptible of a different interpretation, consideration being given to the character and subject-matter of the statement and the end to be accomplished by it.

13. In an insurance policy, equivocation and uncertainty in the language employed, are to be resolved in favor of the insured and against the insurance company.

14. Where the statements of insured in an application for insurance are expressly said to be offered as an inducement to the issue of the proposed policy and the application is made a part thereof, in the absence of a stipulation to the contrary such statements in the application as are material to the risk will ordinarily be warranties.

15. Where an insurance policy provided that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties," fraudulent statements of insured were excluded from the benefits of the provision and may be shown in defense of an action on the policy.

16. Where an insurance policy provided that "no such statement of the insured shall avoid or be used in defence of a claim under this policy unless contained in the written application herefor

and a copy of the application is endorsed on or attached to this policy, when issued," the words, "such statements," necessarily refer to statements previously mentioned or specified, which in the policy in suit were statements, made by the insured in the absence of fraud, hence the defense of fraud in statements made by the insured was available, whether the statements were contained in the application or not, or whether or not the application was attached to the policy.

17. Where an original application for insurance and the medical examination thereon were the basis of an insurance contract, subject to the requirement that the application should be modified to conform to the "war clause" of the policy before it was delivered, which was complied with by the insured signing another application carrying such an agreement but otherwise identical with the original, no question for the jury is raised by the claim that the original application was rejected and the policy issued upon the new application without any medical examination thereunder, as the so-called new application merely affected an amendment to the original application.

18. Where there was no unreasonable delay by the insurance company in deciding to treat a policy as void, when, after death of the insured knowledge of facts showing fraud was first received by it, and there was no evidence to show that by proper investigation it could have determined its rights sooner, and the beneficiary under the policy, on receiving notice that her claim was rejected, immediately insisted on full payment under the policy and promptly brought suit therefor, the insurance company had neither waived the defense of fraud nor was it estopped from making such defense by its delay in tendering return of premiums paid.

19. The fraud of insured in his application for a policy affected the contract from its inception and rendered it voidable at the option of the insurance company whenever the fraud should be discovered.

20. Points not brought to the attention of the trial court will not be considered in review even if briefed.

ACTION OF CONTRACT on a life insurance policy. Answer: A denial of some of the facts alleged in the declaration; a special statement in defense that the contract never took effect as a binding contract of insurance by reason of certain unfulfilled condi-

tions precedent therein contained; and further special statements in defense, of fraudulent representations, breach of warranty, and concealment by the insured of and respecting facts material to the risk in his application.    Trial by jury at the March Term, 1921, Washington County, *Stanton,* J., presiding.    At the close of the evidence the court granted defendant's motion for a directed verdict, and directed a verdict for the plaintiff for the sum tendered into court by the defendant, covering the amount of premiums received on the policy in the lifetime of the insured. The plaintiff excepted.    The opinion states the case.    *Affirmed.*

*J. Ward Carver* and *J. W. Gordon* for plaintiffs.

*Theriault & Hunt* and *Frederick L. Allen* (of New York City) for defendant.

TAYLOR, J.    This action is brought on a policy insuring the life of Orvie M. Jones, deceased.    Though entitled in the name of the administrator of Jones' estate, the cause is prosecuted by the beneficiary, who is the widow of the deceased.    The policy in suit was issued at the same time and on the same application as that involved in *Spaulding, Admr. et al.* v. *Mutual Life Insurance Co.*, 94 Vt. 42, 109 Atl. 22. where a more detailed statement of the pleadings and claims of the parties will be found.    The original answer of the defendant was the same in both cases. After the final disposition of the companion case the defendant pleaded the judgment therein in bar of this action.    The plaintiff replied denying that the cause of action in both suits was the same and that both policies were issued upon the same application, and averring that the answers in the application which the defendant claimed to be false were made under the instruction and by the advice of the defendant's medical examiner, relied upon by the insured, and were understood to be correct when made.    The defendant demurred to this replication, the court sustained the demurrer and rendered judgment for the plaintiff for the sum tendered by the defendant as premiums paid on the policy.    The case came to this Court on plaintiff's exceptions, where the judgment was reversed and the cause remanded.    94 Vt. 445, 111 Atl. 522.    It was then held that the action being on a different policy, though issued on the same application, was not for the same cause of action, and so the former judgment

could not be pleaded as a bar, but could only be used in evidence. The trial that followed was by jury; and at the close of the evidence the defendant moved for a directed verdict, which was granted and the jury was directed to return a verdict for the plaintiff for the amount tendered into court by the defendant. The case is now here on plaintiff's exceptions to the directed verdict.

[1, 2]     The principal questions relate to the effect to be given the adjudication in the former case. The trial court regarded it as conclusive of the controlling questions in the case and ruled accordingly. The rule applicable to such a situation is well settled in our cases and was stated when the case was here on the pleadings. When the second action between the same parties or some of them is upon a different cause of action the former adjudication operates as a bar as to those matters in issue, or points controverted, upon the determination of which the findings or verdict was rendered and no further. Otherwise stated, in such case it is only upon matters actually litigated and determined that the adjudication is conclusive. The decisions are of one accord on the general proposition, but there is not the same agreement respecting what should be deemed to be ''matters in issue or points controverted,'' in contemplation of the rule. Besides, the application of the rule is not without its difficulties in many cases. Ordinarily, it involves an inquiry as to the identity of the subject-matter upon evidence outside the record in the former case; and, unless the proof admits of only one conclusion, presents a question for the jury.

[3-5]     The plaintiff relies upon the claim that a new issue, not decided in the former trial, is raised by the pleadings and proof to the effect that the defendant's medical examiner was fully informed by the insured at the time of the examination respecting previous illness and treatments by physicians, that the medical examiner informed him how to answer the questions contained in the application, and that he answered according to instructions. Much is made of the claim that there is no *res judicata,* because there was no judgment rendered in the former suit on the question involved here. The argument is that as the former case finally turned, the question of fraud became collateral only to the judgment rendered, which was for the plaintiff to recover the sum tendered by the defendant; in other words that the judgment rested on the defendant's concessions and not

on the evidence of fraud.   This amounts to saying that it is only the judgment that is binding in a subsequent action and that there can be no estoppel because there was no judgment rendered in favor of the defendant.   The argument overlooks the well recognized distinction between what is technically known as an estoppel by the judgment and an estoppel by the verdict.   See *Brack* v. *Boyd,* 211 Ill. 290, 71 N. E. 995, 103 A. S. R. 200; *Perkins* v. *Walker,* 19 Vt. 144.   We are dealing with an estoppel of the latter class, which applies when some specific fact or question has been litigated and determined in a former suit and the same fact or question is again put in issue between the same parties or their privies.   True, in such a case there would be no estoppel without a judgment.   It is not the finding of facts which constitutes an adjudication, but the conclusion of the court as to the effect of those facts determined as matter of law.   15 R. C. L. 979.   But the finding having become merged in a judgment no longer lacks the sanction necessary to give it the effect of *res judicata.*   Technically the estoppel is not by the judgment but by the verdict or finding.   Lord Ellenborough, speaking to this point, said in *Ontranor* v. *Morewood,* 3 East, 346: "It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel.   The recovery of itself in an action of trespass is only a bar to the future recovery of damages for the same injury, but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them."

[6]   This is what occurred in the former suit:   There was a trial by jury on the issues raised by the defendant that the policy was of no effect as a binding contract of insurance, for the reason that when the first premium was paid and the policy delivered the insured was not in good health, and for the further reason that it was rendered void by certain fraudulent representations of the insured made in the application for insurance. The defendant tendered and paid into court $489.85 to cover premiums received on the policy in the lifetime of the insured. The case was tried and submitted to the jury upon the theory that the plaintiffs were entitled to a verdict for that amount in any event.   At the close of the evidence there was a motion by

the defendant for a directed verdict on the grounds, stated generally, that on the undisputed evidence, the insured was not in good health at the time the policy was delivered and the first premium paid; and that, on the undisputed evidence, the insured was guilty of fraud in the application, avoiding the policy.    The case was submitted to the jury, which returned a general verdict for the plaintiffs for the full amount of the policy.    On review, we held that the court erred in denying the defendant's motion on the last ground stated.    This result was reached by holding among other things that on the undisputed evidence certain answers appearing in the "statements to medical examiner," were both false and fraudulent.    In short, that the necessary elements of defendant's claim that the policy was rendered voidable by insured's false representations were conclusively established.    The judgment rendered on these conclusions was such as the trial court should have rendered upon a proper determination of the issues litigated at the trial.    The effect of the judgment is the same as it would have been if rendered at the close of the trial in the court below and amounts to a determination of the issues litigated which entered into and formed the basis of the decision.    In legal effect, so far as such issues are concerned, the result is the same as though the formal judgment had been for the defendant.

[7-8]    This brings us to the question whether the evidence, received against defendant's objection, respecting what passed between the insured and the medical examiner supports a new issue, not embraced in the former decision, or is merely additional evidence bearing upon issues that are concluded thereby. The plaintiff's position is clearly defined in her reply to the plea of *res judicata*.    The plea is not answered by way of confession and avoidance but is met by alleging facts tending to impeach the former adjudication.    Her claim here is that the only thing concluded is that the answers written by the medical examiner in the application were untrue or incomplete.    As already said, everything depends upon what was litigated and decided in the final disposition of the former suit.    For light on this subject the pleadings and the opinion of the court may be resorted to. *National Foundry Works* v. *Oconto Water Supply Co.,* 183 U. S. 216, 46 L. ed. 157, 22 Sup. Ct. 111.    In this case they furnish conclusive evidence of the precise questions on which the decision rested.    Other issues by way of defense were raised, but

the case was disposed of on the issue of fraud in the application; and it was determined, as the basis of the judgment, that the defendant's claim that the policy then in suit was rendered voidable by the insured's false representations was conclusively established. It was expressly held, upon a review of the evidence, that the answers in the application now drawn in question were both false and fraudulent and in effect that all the other essential elements of the defense of fraud were fully made out. Thus, the fraudulent character of those representations has, as between the parties to the former suit, become *res judicata*. As the former adjudication has been properly presented in evidence in the case at bar, it is conclusive of the matters embraced in the former decision. *Gilley* v. *Jarvis*, 94 Vt. 135, 109 Atl. 41.

[9-10] Plaintiff's argument on this branch of the case overlooks the scope of the decision. It should be borne in mind that among the essential elements of fraudulent representations are intention to deceive and resultant deception. Deceit was the very gist of the defense in the former suit on which the defendant prevailed. *Nichols* v. *Lane*, 93 Vt. 87, 91, 106 Atl. 592. So of very necessity the former decision settled the question of deceit as an element of the fraudulent representations so as to preclude further inquiry respecting that matter at this time. It was not a mere incident of the decision, nor a matter that came collaterally in question, but was a matter directly involved in the issue litigated and was necessarily decided to support the conclusion reached. Among the cases in point are *Munsell* v. *Munsell's Est.*, 95 Vt. 103, 113 Atl. 521; *Gilley* v. *Jarvis*, 94 Vt. 135, 109 Atl. 41; *Powers* v. *Caledonia County Grammar School*, 93 Vt. 220, 106 Atl. 836; *Blondin* v. *Brooks*, 83 Vt. 472, 76 Atl. 184; *Wells* v. *Boston & Maine R. R.*, 82 Vt. 108, 71 Atl. 1103, 137 A. S. R. 987; *Dietrich* v. *Hutchinson*, 81 Vt. 160, 69 Atl. 661; *Lamoille County National Bank* v. *Hunt*, 72 Vt. 357, 47 Atl. 1078; *In re Well's Est.*, 69 Vt. 388, 38 Atl. 83; *Mussey* v. *Bates*, 65 Vt. 449, 27 Atl. 167, 21 L. R. A. 516; *Chase* v. *School District*, 47 Vt. 524; *Lindsay* v. *Town of Danville*, 46 Vt. 144; *Davenport* v. *Hubbard*, 46 Vt. 200, 14 A. R. 620; *Church* v. *Chapin*, 35 Vt. 223; *Atwood* v. *Robbins*, 35 Vt. 529; *Town* v. *Lamphere*, 34 Vt. 365; *Thompson* v. *Gilman*, 17 Vt. 109; *Rublee* v. *Chaffee*, 8 Vt. 111. In *Tudor* v. *Kennett*, 87 Vt. 99, 88 Atl. 520, attention was called by way of caution to the fact that reference to matters as necessarily or essentially involved in the judgment, or as afford-

ing the groundwork of the judgment, is liable to divert attention from the fundamental requirement of the doctrine of *res judicata* in such cases, viz., the actual decision of a controverted matter. But this cautionary statement should not be misunderstood. It does not overrule the principle so often stated in our cases that every point that was expressly or by necessary implication in issue, and which must necessarily have been decided to support the judgment, is concluded; while the former adjudication is not evidence of any matter which came collaterally in question merely, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment.

The evidence referred to comes too late to be of any avail on the issue of fraud, for that was set at rest by the former decision. So far as the plaintiff now undertakes to show that the insured's statements to the medical examiner were not false, or not fraudulent, or that the fraud practiced by the insured in the application would not render voidable a policy of insurance issued thereon, she is confronted with a conclusive adjudication to the contrary. These questions were manifestly litigated and determined in the former suit. Nor can the plaintiff escape the conclusive effect of the former adjudication upon the theory advanced that the question now in issue is not the same. The defense interposed *is* the same. That the evidence relied upon as raising a new issue is merely further evidence on an issue already determined will be seen when the effect claimed for it is noticed. It is claimed that knowledge on the part of the medical examiner is imputable to the defendant. Assuming without deciding this to be so, it would follow, as claimed, that the defendant must be taken to have known, when the policy was issued, that the answers were not what they purported to be. In short, the representations contained in the answers would neither be false nor fraudulent.

A more plausible claim is that the evidence would show a waiver of true answer, or an estoppel to rely upon the defense of fraud. But the plaintiff could not establish such a waiver or an estoppel without disproving the fraud. The former adjudication covered every essential element of fraud such as would avoid the policy and left none of those questions open to controversy. The plaintiff could not now be permitted to show that the defendant had knowledge of the falsity of the representations to disprove the claim of fraud and its consequences. But such

knowledge is the very basis of the claimed waiver or estoppel. To permit it to be shown would be to permit the plaintiff to disprove facts which by the former adjudication she is precluded from denying. It should require no further argument to show that the claims of waiver or estoppel are not outside the scope of *res judicata.*

It follows that there was no question for the jury as to the identity of the issues respecting fraudulent representations in the application. That the subject-matter was the same is conclusively established by the record evidence in the case. Other issues were raised which plainly enough were not concluded by the former judgment and it remains to consider whether they presented any question for the jury.

Among the issues raised by the pleadings to meet the defense of fraud was the claim that a copy of the application was not indorsed on nor attached to the policy when issued. The basis of this issue is the following provision of the contract: "This policy and the application herefor, a copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the insured shall avoid or be used in defense to a claim under this policy unless contained in the written application herefor and a copy of the application is endorsed on or attached to this policy when issued." The defendant in effect concedes that the words "written application" as used in this provision include the statements to the medical examiner accompanying an application, and that the effect of the provision is to require statements of the insured, upon which a defense other than fraud is predicated, to be indorsed on or attached to the policy when issued. The pertinent grounds of the motion for a directed verdict were, in substance, these: 1. In view of the issue of fraud, a verdict should be directed for the defendant regardless of whether or not a copy of the application was attached when the policy was issued, (*a*) because the statements contemplated in the provision of the policy are statements made by the insured in the absence of fraud, both by the express terms of the provision and as a matter of law having regard to public policy; (*b*) because the fraud of the insured having been conclusively established, the question is immaterial. 2. On all the evidence there is no question for the jury. 3. If,

as claimed by the plaintiff, a copy of the application was not attached to the policy when delivered, the uncontradicted evidence shows that the policy was accepted and the first premium paid by the insured with full knowledge thereof, and that insured assented thereto and waived the provision requiring that the application be attached to the policy when issued.

The history of the transaction, resting on uncontradicted evidence is this: The original application including "statements to medical examiner" was completed on August 15, 1914, and forwarded to the office of the general agent of the defendant at Manchester, New Hampshire. The application was for $10,000 insurance in two policies of $5,000 each. It was sent to the home office in New York City, August 20, where it was received the following day. The application was made on a form then in use by the local agent at Burlington. About this time, owing to the disturbance on the Mexican border, the defendant ceased issuing policies free from restriction as to military and naval service and included such service in the occupations or employments classified as hazardous and restricted during the first year of the policy. A new form of application had been prepared, which included an agreement respecting military and naval service, to be signed by the applicant. The original application was approved subject to the "war clause" and the two policies as issued contained the restriction respecting military and naval service. The policies were forwarded to the Manchester office with instructions to procure an amended or supplemental application covering the agreement respecting military and naval service before delivery to the insured. In due time a new application, complying with the requirement as to military and naval service, was returned to the Manchester office and the policies were thereupon forwarded to the local agent at Burlington and by him delivered to the insured. The insured was at that time told that photographic copies of the new application would be sent on to be attached to the policies. The new application was received at the home office and attached to the original application on August 29th. Photographic copies of the new application were forwarded to the Manchester office, probably on August 31st, and sent forward from there to the local agent at Burlington on September 2nd, accompanied by a letter instructing the agent to procure and forward the insured's acknowledgment that the copies had been attached to the policies. After some delay,

in part at least due to the insured's absence from home, the following acknowledgment was returned:

"WARREN, VT., Sept. 12th, 1914.

MUTUAL LIFE INS. CO. OF N. Y.,

Gentlemen:

I have received and attached to policies # 2,171,545, # 2,171,547, copies of applications for said policies.

Very truly yours,

ORVIE M. JONES,

Insured."

The policy in suit was the one carrying the last number. This acknowledgment had been prepared by the local agent at Burlington and mailed to the insured for his signature. September 22, 1914, the insured wrote the local agent: "When I sent you the papers yesterday I made a mistake. I am sending you the right ones today, and if you will kindly return the ones that I sent you yesterday I will attach them as requested." Thereupon the copies were returned to the insured and the insured's acknowledgment quoted above was mailed by the insured to the agent who in turn forwarded same and it reached the home office September 25th.

Defendant's evidence strongly tended to show that when the policies left the home office a copy of the original application, including "statements to the medical examiner," was attached to each and that the policies were delivered to the insured with these copies still attached. The policy in suit had no copy of the application attached when produced in court, but bore on its face unmistakable evidence that two papers had at some time been attached at the place where it was claimed the defendant affixed the copy of the original application. The plaintiff offered no explanation for the appearance of the policy in this respect except evidence tending to show that it was in the same condition as when delivered to the insured.

[11]    The defendant insists that on the undisputed evidence the copy of the original application was attached to the policy "when issued" in contemplation of the provision in question. In support of this claim our attention is called to the meaning of the term "issued" used elsewhere in the policy. It is said in a case cited by the defendant that the term has a double application, and that its meaning is to be determined by the relation in

which it is employed. *Stringham* v. *Mutual Life Ins. Co.*, 44 Or. 447, 75 Pac. 822. It is quite evident in view of the purpose of the provision, that the term as employed here has a broader meaning than that given to it by the defendant. The provision is primarily for the insured's benefit and would afford no protection unless the copy remained attached until the policy was delivered. But given the construction the plaintiff contends for, the interest of the defendant would require that the policy be delivered with the copy of the application attached, which would make it more probable that this detail had been attended to; while the insured, or his beneficiary, alone would have any motive for detaching the copy. However, these considerations bear upon the weight to be given the testimony, a question addressed to the jury and not the court. The defendant invokes a rule applicable to altered instruments to the effect that a suspicious alteration will be presumed to have been made after the execution of the instrument and that the party claiming thereunder will be required to explain and remove such suspicion. The claim assumes an alteration, while the issue was as to the contents of the instrument when it was delivered and so the rule is not applicable. Plaintiff's position was that the copy, if ever attached, was removed by the defendant or its agents before delivery, because of the change in the form of application.

[12-13] We come to the consideration of the first of the above grounds of defendant's motion for a directed verdict. The claim is that the provision restricting the defense to a claim under the policy applies only to statements made by the insured in the absence of fraud; or, in other words, that where, as here, the defense is fraud in the inception of the contract such as would avoid the policy the fact that the provision had not been complied with would be immaterial. On the other hand the plaintiff claims that unless copies of the application, including the medical statement, were attached to the policy at the time it was delivered no defense can be founded upon statements made therein, and insists that the evidence made the question for the jury whether such copies were attached when the policy was delivered. We have no statute affecting the question, so it is to be determined by the intention of the parties as expressed in the contract. The proper rule of interpretation is stated in *Stanyan* v. *Security Mutual Life Ins. Co.*, 91 Vt. 83, 99 Atl. 417, L. R. A. 1917 C, 350. Language is to be interpreted in the sense intended

by the parties, and the meaning and application of phrases and
sentences is to be as understood by them though the instrument
is susceptible of a different interpretation.   In ascertaining such
meaning consideration is to be given to the character and subject-
matter of the statement and the end to be accomplished by it.
Equivocation and uncertainty whether in the significance of the
terms used or the form and construction of sentences, are to be
resolved in favor of the insured and against the company.   See
also *Kimball* v. *New York Life Ins. Co.*, 96 Vt. 19, 116 Atl. 119.

[14-16]   The insured expressly states in the application that
the statements and answers contained therein, and all those made
to the company's medical examiner in continuation thereof, are
offered as an inducement to the issue of the proposed policy.   It
is further stipulated in the policy that the application constitutes
a part of the contract, the policy and the application constituting
the entire contract.   So it is, in the absence of a stipulation to
the contrary, that the statements in the application material to
the risk would ordinarily be classed as warranties.   14 R. C. L.
1027; *Schofield's Admx.* v. *Metropolitan Ins. Co.*, 79 Vt. 161, 64
Atl. 1107.   The policy obviates this effect by a provision that
"all statements made by the insured shall, *in the absence of
fraud,* be deemed representations and not warranties."   The
manifest intention is to exclude fraudulent statements from the
benefit of this provision, the distinction being made between
statements that are false and those that are both false and fraud-
ulent.   Then follows in the same sentence, "and no such state-
ment of the insured shall avoid or be used in defence of a claim
under this policy unless contained in the written application
herefor and a copy of the application is endorsed on or attached
to this policy when issued."   The evident purpose of this clause
of the policy is to give greater certainty respecting matters that
may be availed of in defense and to place in the possession of
the insured full evidence of what his contract is.   These benefits
are secured to him by the agreement that certain statements shall
not be available in defense unless contained in the written ap-
plication and a copy of it is indorsed upon or attached to the
policy when issued.   What statements are thus excluded as
matters of defense?   Not all, otherwise the descriptive word
"such" would have no force or effect.   "Such statements"
necessarily refer to statements previously mentioned or specified.
*Daniels* v. *Clarke*, 193 Mass. 84, 78 N. E. 751; 37 Cyc. 513.   They

can refer only to "statements made by the insured in the absence of fraud," which is the immediate and only possible antecedent of the expression. It is not to be supposed, in view of the language employed, that it was intended to bar the defense of fraud in statements made by the insured whether contained in the application or not; and by the same token they are not barred if a copy of the application is not attached to the policy when issued. It follows that the defense relied upon would not be barred, if it should be established that the copy of the original application was not attached to the policy when delivered, which renders that issue immaterial. We do not reach the other objections raised by the defendant in its motion for a directed verdict. In the view we take of the provision, the question of waiver by the insured, and other issues respecting the claimed failure to attach copies of the application, become of no importance.

[17]    It is said that the original application was rejected and later a new application made out, upon which the policies were issued and upon which there was never any medical examination. This objection is too artificial to require more than passing notice. The evidence is all to the effect that the original application and medical examination thereon were the basis of the contract, subject only to the requirement, already referred to, that the application should be so modified as to conform to the "war clause" of the policy. The policy was executed and sent forward to be delivered when the agreement respecting military and naval service was furnished. The requirement was complied with by signing a new application carrying the agreement, but in other respects identical. In legal effect it was the same as though the agreement had been entered into in a less formal manner. The so-called new application merely effected an amendment of the original to conform to the policy as issued. This also disposes of the claim that there was a question for the jury whether there was any medical examination for the second policy. There was only one medical examination but that was on an application for two policies, one of which is the policy in suit.

[18]    Another claim relied upon by the plaintiff is that the defendant waived the right to make the defense of fraud, or is estopped from making it, because it did not return the premiums paid within a reasonable time, nor give notice within a reasonable time of its repudiation of the contract. It is insisted that there

was evidence to make this a question for the jury.   The evidence pertinent to this claim tended to show that the insured died August 29, 1915.   The report of his death was sent to the company September 7, 1915.   The proofs of death were made out on forms furnished by the defendant and were sent in soon after September 29, 1915.   Some of the certificates were sworn to before Greene, the defendant's agent in procuring the policy. By letter of November 26, 1915, the defendant notified the plaintiff that her claim had been rejected at a meeting of the directors of the company on November 24, 1915, and that it refused to pay the policy.   The plaintiff immediately notified the company that she insisted on its liability, and on December 15, 1915, commenced this action.   February 18, 1916, as shown by the testimony (but January 6, 1916, as shown by the docket entries) the defendant filed its answer in which it avers a previous offer, which is therein renewed, to return the money paid by the insured as premiums on the policy with interest thereon and the costs then accrued, aggregating $489.84.   This sum was paid into court when the answer was filed.

The point, to say the least, is very imperfectly briefed by the plaintiff.   It is claimed that the delay in taking steps to "rescind" the contract was unreasonable, and that the defendant thereby waived or is estopped from making the defense, but no authorities are cited in support of the claim.   It is not claimed, nor could it well be, that there was any unreasonable delay in deciding to treat the policy as void.   There was no controversy in the evidence but that the defendant first obtained knowledge of the grounds upon which its defense is based after the death of the insured and in connection with its investigation of the claim.   It was only when the proofs of death were received, probably early in October, that, so far as appears, it had any reason to suspect that the policy had been procured through fraud.   There was no evidence tending to show that the company could have upon proper investigation, sooner determined what its rights were; so the delay in rejecting the claim would furnish no legitimate basis for an inference of waiver.   There is left the question whether the delay in offering to return the premiums was evidence of a waiver or of an estoppel.   The delay was certainly not to the prejudice of the plaintiff, for, on receiving notice that her claim was rejected, she immediately insisted on full payment under the policy and promptly brought suit to enforce

her demand.   It is by no means certain that the plaintiff and
not the administrator of Jones' estate would be entitled to have
the premiums returned; but in any event the position taken by
the plaintiff was such that tender of payment to her would have
been idle ceremony.

[19]   The plaintiff treats the matter as though it were a
question of rescission, which strictly speaking it is not.   The
fraud of the insured affected the contract from its inception and
rendered it voidable at the option of the defendant whenever
the fraud should be discovered.   Before the fraud was discov-
ered the event insured against had occurred.   Within a time not
complained of thereafter, the defendant declared the forfeiture.
The real question then is whether by the delay in tendering a
return of the premiums the defendant waived the right to insist
upon the forfeiture in defense of an action on the policy.   The
right in such circumstances to recover premiums paid on the
policy is not involved.   As to this, there is some disagreement in
the cases, though the view is generally taken by text-writers on
the subject that actual fraud in the inception of the contract on
the part of the insured forfeits his claim to a return of premiums,
notwithstanding the fact that no risk has ever attached.   See
case note, 3 L. R. A. (N. S.) 114.   But there is little, if any,
dissent from the proposition that a return of the premiums is
not essential to the avoidance of a policy, or that their retention
is not a waiver of the forfeiture, where the insured was guilty of
fraud in obtaining the policy and knowledge of the ground of
avoidance is first had after the death of the insured, when the
rights of the parties have become fixed.   The question is treated
exhaustively in *Taylor* v. *Grand Lodge, etc.,* 96 Minn. 441, 105
N. W. 408, 3 L. R. A. (N. S.) 114, where the cases are fully re-
viewed.   See also 14 R. C. L. 1193; note 32 L. R. A. (N. S.) 298.
The rule applicable to the circumstances of this case is so well
established that we refrain from any extended discussion of the
question.   We hold that the defendant was not required to do
more than it is shown to have done by way of offering to return
the premiums to make the defense of fraud available.

[20]   We have reviewed all the points relied upon by the
plaintiff in the court below in opposition to the motion for a
directed verdict.   As she is the excepting party we are not at
liberty to consider other points not brought to the attention of
the trial court to find error, if perchance any such are made in

plaintiff's brief. *Grapes* v. *Willoughby*, 93 Vt. 458; *Seaver* v. *Lang*, 92 Vt. 501. As we hold that the defense of fraud avoiding the policy was conclusively established by the evidence of the former adjudication, questions discussed respecting other matters of defense become unimportant. Plaintiff's exceptions will have to be overruled.

*Judgment affirmed.*